THE UNDERWOOD TYPEWRITER COMPANY *vs.* FRED-
ERICK S. CHAMBERLAIN, TREASURER.

First Judicial District, Hartford, May Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

Chapter 292 of the Public Acts of 1915, §§ 19–23 (General Statutes,
§§ 1391–1395), prescribes, among other things, that certain cor-
porations, whether foreign or domestic, carrying on business in
this State, shall each pay an annual tax of two per cent upon its
net income, or, if the corporation also does business elsewhere,
upon such part of its net income as the fair cash value of its real
estate and tangible personal property in this State, at the close of
its last fiscal year, bears to the like value of its entire real estate
and tangible personal property then owned by it. *Held:—*

1. That the burden thus imposed was one in the nature of an excise
   tax, leviable alike against domestic and foreign corporations for
   the privilege of doing business in a corporate capacity within this
   State.
2. That such an excise or privilege tax, computed in the manner pre-
   scribed by the statute, was not in contravention of the commerce
   clause of the Federal Constitution (Art. I, § 8), there being no dis-
   crimination against interstate commerce either in the admeasure-
   ment or enforcement of the tax.
3. That inasmuch as it appeared from the record that about 90 per
   cent of the plaintiff's gross receipts for the year in question resulted
   from the sale of its products manufactured and warehoused in this
   State, valued at about $6,000,000, and that its gross profits from
   such sales amounted to about 80 per cent of its total receipts from
   all sources, while only 47 per cent of its entire net income was sub-
   ject to the tax,—it could not successfully be contended by the
   plaintiff, either that the tax imposed was one on its business trans-
   acted, or upon its property located, outside of this State, and thus
   a seizure of its property "without due process of law," or that the
   amount of the tax, $12,593, was excessive or unreasonable, since
   that was less than two-tenths of one per cent of the market value
   of the plaintiff's Connecticut typewriter product after charging
   off manufacturing costs.
4. That the most which could be expected of a statute of this character,
   was a rule which would produce results approximately equitable,
   fair and just, and that the result reached in the present instance
   was not unreasonable, oppressive or unconstitutional; while the
   statutory classification of the miscellaneous corporations subject

to the tax, into (a) those deriving profits principally from the sale or use of tangible personal property, and (b) those whose profits were derived principally from the holding or sale of intangible property, was manifestly an attempt to do substantial justice, and not to get the largest possible return from the corporations engaged in interstate commerce, as contended by the plaintiff.

5. That no delegation of legislative authority was involved in the adoption by our statute of the Federal Income Tax Law's definition of "net income," nor was any constitutional privilege violated by the clause of the statute (§ 1392) requiring the rendition to the tax commissioner of the taxpayer's last return to the collector of internal revenue.

Argued May 6th—decided July 16th, 1919.

APPLICATION in the nature of an appeal for relief from the action of the taxing authorities of the State in apportioning and assessing a tax of $12,593 against the plaintiff under the provisions of §§ 19 to 23 of Chapter 292 of the Public Acts of 1915, upon the alleged ground that such provisions were in violation of the Federal Constitution, brought to and reserved by the Superior Court in Hartford County, *Case, J.,* upon an agreed finding of facts, for the advice of this court. *Judgment advised for defendant.*

Part IV of Chapter 292 of the Public Acts of 1915, deals with miscellaneous corporations, defined as all corporations required to report to the Collector of Internal Revenue under the income-tax law of the United States, except insurance, banking, transportation and public-service corporations.[1]   It provides for the pay-

[1] Public Acts of 1915, Chapter 292, §§ 19–23 inclusive (now General Statutes, §§ 1391–1395):

"Sec. 19. The term 'company' as used in this part shall include every corporation, joint stock company, or association carrying on business in this state which is required to report to the collector of internal revenue for the district in which such company has its principal place of business and for the purpose of the assessment, collection, and payment of an income tax, except insurance and trust companies, state banks, savings banks organized under the laws of this state, banking institutions organized under the laws of the United States and located

ment by every such corporation carrying on business in this State of an annual tax of 2% on the net income upon which it is required to pay a tax to the United States, and in case such corporation also carries on

in this state, express companies carrying on business on steam or electric railroads or street railways, steam or electric railroad or street railway corporations, companies whose principal business in this state is furnishing, leasing, or operating dining, sleeping, chair, parlor, refrigerator, oil, stock, fruit, or other cars, corporations whose principal business is manufacturing, selling, and distributing illuminating or heating gas, or electricity to be used for heat, light, or motive power, or water for domestic or power purposes, telegraph, cable, and telephone companies.

"Sec. 20. Each such company, except as provided in section nineteen, shall pay a tax annually to the state upon the net income for its fiscal or calendar year next preceding, as hereinafter provided, upon which income such company is required to pay a tax to the United States. Such company subject to the tax imposed under part four shall render to the tax commissioner, on or before the first day of April of each year, under oath or affirmation of its president, vice-president, or other principal officer, and of its treasurer or assistant treasurer, a true copy of the last return made to the collector of internal revenue, of the annual net income arising or accruing from all sources in its fiscal or the calendar year next preceding, stating:

"(1) The name and location of the principal place of business of such company, the state under the laws of which organized, and the date thereof; the kind of business transacted and a list of all subsidiary companies, if 'any, with the location of the principal place of business of each; (2) the amount of its paid-up capital stock outstanding, or if no capital stock, its capital employed in business, at the close of the year; (3) the total amount of its bonded and other indebtedness at the close of the year; (4) the gross amount of its income, received during such year from all sources, and, if organized under the laws of a foreign country, the gross amount of its income received within the year from business transacted and capital invested within the United States; (5) the amount of its ordinary and necessary expenses paid out of earnings in the maintenance and operation of the business and properties of such company, stating separately all rentals or other payments required to be made as a condition to the continued use or possession of property, and, if organized under the laws of a foreign country, the amount so paid in the maintenance and operation of its business within the United States; (6) the amount of losses sustained during the year and not compensated by insurance or otherwise, stating separately any amounts allowed for depreciation of property; (7) the amount of interest accrued and paid within the year on its bonded or other indebtedness not ex-

business outside of the State, it provides for the payment of a like tax upon a part only of its net income, apportioned in the manner specified in § 22.   No dis-

ceeding one half of the sum of its interest-bearing indebtedness and its paid-up capital stock, outstanding at the close of the year, or if no capital stock, the amount of interest paid within the year on an amount of indebtedness not exceeding the amount of capital employed in the business at the close of the year, or in case of a company organized under the laws of a foreign country, interest so paid on its bonded or other indebtedness to an amount of such bonded or other indebtedness not exceeding the proportion of its paid-up capital stock outstanding at the close of the year, or if no capital stock the amount of capital employed in the business at the close of the year, which the gross amount of its income for the year from business transacted and capital invested within the United States bears to the gross amount of its income derived from all sources within and without the United States; (8) the amount paid by it within the year for taxes imposed under the authority of the United States or of any state or territory thereof, and, separately, the amount so paid by it for taxes imposed by the government of any foreign country; (9) the net income of such company after making the deductions authorized; (10) the amount of taxes paid upon its income to the internal revenue department for the year next preceding the one for which such return is made; (11) in case of a company which carries on business outside the State, the fair cash value of its real estate and tangible personal property in each town in this state, and the fair cash value of its real estate and tangible personal property located outside this state; (12) in case of a company deriving profits principally from the holding or sale of intangible property the gross receipts from its business within and without this state and the gross receipts from its business within this state.

"Sec. 21. If the amount of the annual net income as returned by each such company to the collector of internal revenue is changed or corrected by the commissioner of internal revenue or by other official of the United States, such company, within ten days after receipt of notification of such change or correction, shall make return under oath or affirmation to the tax commissioner of such changed or corrected net income upon which the tax is required to be paid to the United States. If any deduction is made from the net income as returned, the comptroller shall draw his order in favor of such company on the treasurer, on the voucher of the tax commissioner for the amount of any tax paid upon such deduction, or if any addition is made, such company shall, within thirty days after receipt of notice from the tax commissioner of the amount of such addition, pay the tax thereon.

"Sec. 22. If such company carries on business outside of this state, a portion of the net income on which the tax is imposed by the United

tinction is made in the Act between domestic and foreign corporations.

The plaintiff is a Delaware corporation deriving profits principally from the manufacture, sale and repair

---

States shall be apportioned to this state as follows: In case of a company deriving profits principally from the ownership, sale, or rental of real estate, and in case of a company deriving profits principally from the sale or use of tangible personal property, such proportion as the fair cash value of its real estate and tangible personal property in this state on the date of the close of the fiscal year of such company in the year next preceding is to the fair cash value of its entire real estate and tangible personal property then owned by it, with no deduction on account of any incumbrance thereon; in case of a corporation deriving profits principally from the holding or sale of intangible property, such proportion as its gross receipts in this state for the year ended on the date of the close of its fiscal year next preceding is to its gross receipts for such year within and without the state.

"Sec. 23. The tax commissioner, on or before the first day of July in each year, shall make a list of companies subject to the tax upon their net incomes, with the amount of such net incomes taxable in this state, determined as aforesaid, and a tax is hereby laid on each such company of two per centum of such net income, and the tax commissioner shall enter the amount of such tax against the name of each such company. He shall certify to the correctness of such list and said amounts, and deliver a copy thereof to the treasurer, who shall collect such tax in the manner and with the powers provided in the general statutes for the collection of taxes in towns. The tax commissioner shall forthwith mail a statement of the amount of such tax to each such company, but failure to receive such statement shall not excuse nonpayment of such tax. Such tax shall be payable on or before the first day of August in such year, and to any sum or sums due and unpaid after the first day of August in any year, after ten days' notice and demand thereof by the treasurer, shall be added the sum of five per centum on the amount of any tax unpaid,and interest at the rate of three-fourths of one per centum per month upon such tax from the time the same became due, provided, in case of failure to make such return, or in case of false or fraudulent return, the tax commissioner, upon discovery thereof at any time within three years after the same is due, shall make a return of such taxable net income, and the tax thereon shall be paid by such company upon notification of the amount thereof. Such tax, if unpaid, shall constitute a lien upon the real estate of such company within this state, such lien to be in force from the filing of a certificate, signed by the treasurer, in the land records of the town wherein such real estate is situated until such tax and interest is paid."

of so-called Underwood typewriters. Its only manufacturing plant is in Hartford, Connecticut. It also sells and rents adding machines made in Connecticut by other manufacturers, rents slot machines made by it in Connecticut, and sells desks and other typewriting supplies not manufactured in this State. The plaintiff's gross profits from its sales, and its receipts from all other sources within and without the State, were as follows for the year 1915:—

| | |
|---|---|
| Gross profits from sales of Company's typewriter products manufactured in Connecticut, | $6,209,316.40 |
| Receipts from rentals of slot machines manufactured by the plaintiff in Connecticut, | 191,368.58 |
| Receipts from rentals of Company's typewriter products manufactured in Connecticut, | 435,645.80 |
| Receipts from sale of adding machines manufactured in Connecticut by a third party, | 31,186.21 |
| Dividends, | 8,288.19 |
| Discounts, | 14,627.36 |
| Interest, | 29,456.00 |
| Receipts from sale of desks, furniture and other accessories not manufactured in Connecticut, | 162,548.43 |
| Rental of Connecticut real estate | 44,400.00 |
| The plaintiff's expenses other than manufacturing costs were | 6,249,961.42 |
| And its net income on which a tax was payable to the United States was | 1,336,586.13. |

The term "gross profits" in the above tabulation, means receipts less manufacturing costs. General administrative expense, including salaries, selling ex-

penses, and other similar charges, are included in the amount deducted from gross receipts to ascertain net income.

The fair cash value of the plaintiff's real estate and tangible personal property located within the State of Connecticut on January 1st, 1916, was $2,977,827.67; and the fair cash value of its real estate and tangible personal property located without the State of Connecticut was $3,343,155.11.

The plaintiff made and filed with the Tax Commissioner of Connecticut a return under protest, showing the net income on which it was required to pay a tax to the United States. The Tax Commissioner apportioned the sum of $629,668.50 as the portion of its net income on which the plaintiff was required to pay a tax of 2% in the State of Connecticut, and the plaintiff subsequently paid to the State treasurer the assessed tax of $12,593.37 under protest, claiming that Part IV of Chapter 292 of the Public Acts of 1915 was, as against the plaintiff, void as an attempted restraint on interstate commerce, and because it violated the Fourteenth Amendment to the Federal Constitution.

The cause came before us on an agreed statement of facts including those above outlined, and others stated in the opinion. Our advice is asked on the following questions:—

(1) "Whether or not under said pleadings and said agreed finding of facts, and in respect to the Underwood Typewriter Company, the portion of the statute providing for the return and tax and the assessment and apportionment thereof under and in accordance with Sections 19 to 23 inclusive of Chapter 292 Public Acts of 1915, is in violation of the provisions of the Constitution of the United States, in that it constitutes a tax or burden on interstate commerce contrary to Section 8 of Article 1, and upon the net income of business and

sales made outside the State contrary to the Fourteenth Amendment to said Constitution.

(2) "Whether or not the amount assessed upon the Underwood Typewriter Company under said sections of Chapter 292 of the Public Acts of 1915 is illegal and excessive for the reason that it is based not only upon the net income of the corporation from its business within the State of Connecticut, but upon the net income of the corporation from its business both within and outside the State.

(3) "Whether or not that portion of the statute providing for a disclosure by the Underwood Typewriter Company to the officials of Connecticut of its report made to the Federal Government on which an income tax is assessed by said government is in violation of Section 2 of Article 4 of the Constitution of the United States and contrary to the Fourth, Fifth and Fourteenth Amendments, or any of them."

*Arthur L. Shipman* and *Josiah H. Peck*, for the plaintiff.

*George E. Hinman* and *James E. Cooper*, with whom, on the brief, was *Frank E. Healy*, Attorney-General, for the defendant.

*Arthur M. Marsh*, by leave of court, as *amicus curiæ*.

BEACH, J. It is necessary in the first place to determine the nature of the tax complained of. The State contends that it is in the nature of an excise tax, the plaintiff that it is a tax on property, and the brief filed by the *amicus curiæ* that it is an income tax. We think the State is right in its characterization of the tax. It is not a tax on property; the plaintiff pays a separate local tax on its property. This tax falls on income and

not on property. If the plaintiff had made no net income for the year 1915, it would have escaped this tax altogether, although its taxable property in Connecticut on July 1st, 1915, remained the same as before.

It is not an income tax, as such, because it is assessed only if and when the corporation does business within the State, and in the case of domestic corporations doing business in this and other States there is no attempt to assert personal jurisdiction for the purpose of taxing their entire income. Foreign and domestic corporations are treated alike, and the entire income is not taxed unless the entire business of the corporation is done within the State. It is apparent, therefore, that the basis of the tax is not jurisdiction over the property or over the person of the corporation, but jurisdiction over its business; and that it is a tax in the nature of an excise tax levied against domestic and foreign corporations alike, for the privilege of doing business in a corporate capacity within this State. In 1917 the General Assembly (Chap. 298, § 6, General Statutes, § 1401) characterized the tax as follows: "The tax . . . shall be in lieu of all other taxes upon the franchises of the domestic corporations included in the companies defined in said Part IV, except the tax on capital stocks provided by section 61 of Chapter 194 of the Public Acts of 1903 [General Statutes, § 3506], and shall be in lieu of all other taxes on the privilege of doing business within this State upon the foreign corporations included in the companies defined in said Part IV." The legislative construction thus put upon Part IV of the Act, although not in itself conclusive, is consistent with its practical consequences, and accords with the conclusion already stated. The fact that the tax is measured by a percentage of net income, or, in the case of a corporation engaged in interstate commerce, by a percentage of a part of its net income proportioned to the amount

of its tangible property in this State, does not, of course, prevent it from being an excise or privilege tax.

The next question is whether the tax, regarded as an excise or privilege tax is, in its application to the plaintiff corporation, an unlawful restraint on interstate commerce. This question appears to us to have been answered in the negative by the recent case of *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 38 Sup. Ct. 499, wherein the Supreme Court took occasion to point out some of the things which a State might lawfully do in levying taxes on the net incomes of corporations engaged in interstate commerce. We quote from page 326: "But property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchise within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on business, but its enforcement left to the ordinary means devised for the collection of taxes." And again, on page 329: "A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed

upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the general and ordinary burdens of the government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States."

The plaintiff contends that the *Glue Co.* case is authority for the taxation of net incomes of domestic corporations only. But this ignores the plain statement above quoted, that a tax which is in form a tax for the privilege of exercising its franchise within the State may be levied upon a corporation whether foreign or domestic engaged in interstate commerce, if the ascertainment of its amount is made dependent in fact on the value of its property within the State, and if it does not exceed the sum which might be leviable directly thereon.

Of course, no tax at all can be laid by any State which is in form or effect a direct tax on interstate commerce. And for the purposes of this case the significance of the quotation from page 329 of the opinion is that the tax on net income—as distinguished from a tax on gross receipts, condemned in *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298, 32 Sup. Ct. 218, and in *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, 38 Sup. Ct. 126—is not in form or effect a direct tax on interstate commerce. It is, therefore, a tax which a State may assess against persons or corporations engaged in interstate commerce, provided it keeps within its jurisdiction in other respects and within the limitations noted in the opinion.

As we read the opinion in the *Glue Co.* case it decides that within the limitations stated a State may tax the entire net income of a domestic corporation engaged in interstate commerce; and it points out as a logical consequence of this decision that a State may, under the form of a privilege tax, tax some fractional part of the net income of a foreign corporation engaged in interstate commerce, provided the apportionment is made dependent in fact on the value of its property situated within the State, that the amount of the tax is not excessive regarded as a tax on property within the State, and that there is no discrimination against interstate commerce in the admeasurement or enforcement of the tax.

The tax in question complies with every requisite pointed out. It is made dependent in fact on the value of the plaintiff's tangible property in Connecticut at the close of its fiscal year next preceding the assessment; and in determining its reasonableness from the jurisdictional standpoint, the fact should be regarded that all corporations deriving profits principally from the sale of tangible personal property, and most, if not all, corporations deriving profits principally from the use of such property, will almost necessarily have on hand at any given time and place but a small part of the property which constituted their entire local stock in trade for the year.

It is so in this case, for the schedules show that the plaintiff's typewriter products manufactured in this State and sold during the year 1915, brought approximately six millions of dollars over and above manufacturing costs. All of this property was within the protection and the taxing jurisdiction of Connecticut for some part of the year 1915; and the plaintiff was not otherwise taxed in this State on any part of it, except the relatively small part which happened to be

on hand on the day when its property was valued for local taxation in Hartford. Adding this value, or any reasonable part of it, to the agreed value of the plaintiff's tangible property in this State on January 1st, 1916, the tax complained of cannot amount to two-tenths of one per cent of the plaintiff's total taxable property located in this State during the year 1915.

The payment of the tax is not made a condition precedent to the right to carry on the business, but its enforcement is left to the ordinary means for the collection of taxes, and there is evidently no discrimination against interstate commerce or foreign corporations.

Since we rest our decision, so far as the commerce clause of the Federal Constitution is concerned, squarely on the opinion in the *Glue Co.* case, it is useless for us to review the authorities whose aggregate effect is authoritatively summed up in that opinion. It is enough to say that no later decision of that court has been brought to our attention which in any way qualifies or restricts the fundamental proposition that a State tax which is otherwise within the constitutional and jurisdictional limits of its taxing power, is not unconstitutional because it takes the form of a tax on the entire net income of a domestic corporation engaged in interstate commerce, nor because it takes the form of a tax on a part of the net income of a foreign corporation engaged in interstate commerce.

It may be added that the provisions for the apportionment of net income according to the relative value of tangible property within and without the State, distinguish our statute from those which were under consideration in *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 30 Sup. Ct. 190; *Looney* v. *Crane Co.,* 245 U. S. 178, 38 Sup. Ct. 85, and *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, 38 Sup. Ct. 292. In each of these cases a State tax which was in form a permit

or excise tax was assessed as a percentage on the entire capital stock of foreign corporations, and was held to be "essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other States; and this because the capital stock of the corporation represents all its business of every class and all its property wherever located." 246 U. S. 142, 38 Sup. Ct. 292.

The case of *Baldwin Tool Works* v. *Blue*, 240 Fed. Rep. 202, may be briefly referred to for it is directly in point. In that case the West Virginia statute, which was upheld, required every corporation doing business both in and out of the State to pay a percentage tax on a part of its net income apportioned according to the value of all its property within and without the State.

The brief filed by the *amicus curiæ* calls attention to the fact that Professor Powell has criticised the opinion in *Baldwin Tool Works* v. *Blue*. 31 Har. Law Rev. 760–765. But in a later article the learned author admits that the *United States Glue Co.* case "shakes the criticism heretofore passed upon *Baldwin Tool Works* v. *Blue*," and explains in a foot-note that his former criticism assumed that there was no distinction to be drawn between an excise measured by net profits and one measured by gross receipts. 32 Har. Law Rev. 645.

The first question submitted to us also raises the issue that the tax complained of violates the Fourteenth Amendment, because it is a tax upon the net income of business done and sales made outside of the State. The issue thus stated erroneously assumes that the tax is an income tax, as such, and not a tax for the privilege of carrying on a manufacturing business in this State. It also ignores the fact that the tax is

not assessed upon the entire net income of the plaintiff, but upon 47% only of its entire income, the remaining 53% being automatically exempted by the statutory rule of apportionment.

The real question is whether a privilege tax of 2% on 47% of the plaintiff's net income, is a tax on its business done, or its property located, outside of this State. Speaking generally, the situation is that the plaintiff carries on its entire manufacturing business within this State. Its gross receipts from the sale of its products manufactured in this State amount to about 90% of its total receipts, and after deducting manufacturing costs its gross profits from the sale of this product amount to about 80% of its total receipts from all sources. Its selling business is managed from its main offices in New York, to which all orders for the sale and rental of typewriters and other products are forwarded. The plaintiff's officials at its main office direct its factory managers in Hartford to ship typewriters and other products direct to the various branch offices for the purposes of making deliveries to the purchasers and lessees thereof. It thus appears that the bulk of the plaintiff's products is also warehoused in Connecticut until sold, and in that way receives additional protection from the State.

It is plain that a privilege tax, if otherwise reasonable, might be levied upon every dollar of net income derived from the sale of goods thus manufactured, or manufactured and warehoused, in Connecticut, without justifying the complaint that the plaintiff is taxed upon business done or property located outside of the State.

Regarded as a tax on property, no claim can well be made that the tax is so unreasonable in amount as to justify the complaint that it practically results in taxing property without the State; it amounts to less than

two-tenths of 1% of the market value of the plaintiff's typewriter products manufactured in Connecticut after charging off manufacturing costs. Regarded as a tax on the privilege of doing business in this State, the same answer applies to any complaint that the tax is in substance a tax on business done without the State. A corporation whose manufacturing business produces an annual product exceeding $6,000,000 in market value, cannot reasonably complain that a privilege tax of $12,000 is too large to be reasonably allocated to that part of its business.

The argument against the constitutionality of the statutory apportionment must come, we think, to the point of successfully showing that 47% of the plaintiff's net income cannot reasonably be attributed to its manufacturing and warehousing and shipping operations in Connecticut. Incidentally the plaintiff also received about $100,000 from sales and rentals in Connecticut. But laying that aside, the plaintiff's argument on this branch of the case carries the burden of showing that 47% of its net income is not reasonably attributable, for purposes of taxation, to the manufacture of products from the sale of which 80% of its gross earnings was derived after paying manufacturing costs. Upon this record the plaintiff has made no attempt to shoulder such a burden and if it had been possible, by expert evidence or otherwise, to lay any basis of evidence for such a claim, we should suppose that the plaintiff would have, at least, attempted to do so. As the record stands we are asked to take judicial notice of the fact that 47% of the net income of the plaintiff corporation cannot reasonably be attributed to its operations in Connecticut, and to declare the statute unconstitutional upon the bare assertion that the statutory method of apportionment as applied to the plaintiff's income, taxes property and business with-

out the State, although 53% of the plaintiff's income is exempted by the apportionment.

The only specifications which the plaintiff's brief furnishes in support of its charge that the statutory apportionment results in the taxation of its property and business in other States, are based upon the allegation that the income taxed necessarily includes receipts from repairs made in other States, from profits on the sale of adding machines manufactured by third parties, from dividends, discounts and interest received outside of Connecticut and from the sale of desks, etc., manufactured outside of this State. The receipts from these items aggregate less than 10% of the plaintiff's total gross receipts, and except for the items of dividends and interest the extent to which they produced net income is wholly uncertain. As to the other 90% of the plaintiff's gross receipts, it is tacitly admitted that some part of them, and therefore some part of the net income resulting therefrom, is attributable to the plaintiff's property and business in Connecticut. On this record the amount of the plaintiff's net profit attributable to its operations in Connecticut cannot be ascertained. It is a matter of estimate and approximation rather than of mathematics. The most that can be expected is that a statutory rule should be laid down intended and adopted to produce a fair and constitutionally lawful apportionment. Then the rule must be tested by the results which it produces, but with due regard to the impossibility of producing anything but approximate results; in the present instance, it seems clear that the result is not unreasonable, oppressive or unconstitutional.

Some general criticisms of the rule of apportionment are made. It is said that the real defect in the law is that the income is apportioned with reference to the value of tangible property in Connecticut as compared

with tangible property elsewhere; whereas the apportionment should have been founded on the proportionate holdings of property of all kinds within and without the State. It is pointed out that if intangibles were included in the comparisons foreign corporations would fare better, since their intangible assets would have a *situs* at the domicil. But the suggestion that the rule was adopted for the purpose of getting the largest possible return from corporations engaged in interstate commerce is not tenable, because the rule applies to domestic as well as to foreign corporations. If the object of the legislature had been to get the largest return, it would have resorted to its personal jurisdiction over domestic corporations and taxed their entire net income from business wherever carried on.

A more reasonable explanation of the rule is to be found in the nature of the tax and in the class of corporations to which the particular rule in question is applied. As already pointed out, the tax is a tax on the privilege of doing business in a corporate capacity in this State. The legislature evidently intended to make the tax proportionate to the value of the privilege. Accordingly, it divided miscellaneous corporations doing an interstate business, without making any distinction between domestic and foreign corporations, into two classes (a) those deriving profits principally from the sale or use of tangible personal property, and (b) those deriving profits principally from the holding or sale of intangible property. As to class (a) the rule of apportionment is based on tangible property within and without the State, and as to class (b) on gross receipts within and without the State. The attempt to do substantial justice is manifest. The plaintiff's theory is that the real producing elements of net income depend on the executive management of the corporation, rather than on its plant. But the ordinary

trading or manufacturing corporation is commonly supposed to make its profit from the intelligent use and sale of tangible property, and other things being equal it is not unjust to allocate its net income, for purposes of estimating the value of the privilege of doing business here, with reference to the value of its tangible property in this and other jurisdictions.

A suggestion that the rule works injustice in this case is based on the plaintiff's return to the Tax Commissioner showing paid up capital stock of $13,000,000. The agreed fair cash value of the entire tangible property of the plaintiff within and without the State is only $6,300,000, and the plaintiff's brief assumes that the difference of $6,700,000 represents intangible assets of that value now owned by the plaintiff. There is, of course, no presumption that paid up capital represents existing assets, and except for the receipt of dividends and interest amounting to about $38,000 there is nothing in the record to show that the plaintiff owned any intangible assets on the taxing date in question.

These considerations dispose of the first and second questions submitted.

The third question requires no discussion. The Federal Income Tax Law is a domestic statute. No delegation of legislative authority is involved in adopting its definition of net income. It is a matter of convenience to taxpayers and economy to the State not to set up a separate standard and another administrative establishment for the measurement of taxable net income. No constitutional privilege of corporations is violated by requiring the production of the plaintiff's return to the Collector of Internal Revenue.

The first, second and third questions are answered in the negative and the Superior Court is advised to render judgment for the defendant.

In this opinion PRENTICE, C. J., RORABACK and GAGER, Js., concurred.

WHEELER, J. (dissenting). The opinion of the majority holds that the tax in question, as authorized by the statute of Connecticut, "is a tax in the nature of an excise levied against domestic and foreign corporations alike for the privilege of doing business in a corporate capacity within this State," and as such is not in violation of the commerce clause or the due process clause of the United States Constitution.

The case before us concerns a tax levied upon a foreign corporation doing a local business in Connecticut.

There are two classes of so-called privilege or excise taxes upon a foreign corporation. One is a privilege tax in name and fact,—a tax levied for the privilege of doing business in a State other than that of the corporate domicil, and in no sense levied because of, or in relation to, property value. The other is a privilege or excise tax in name, but in fact a property tax levied upon a corporation doing business in a State other than that of its domicil, to compel payment of a tax upon the value of its property or business in that State as a going concern in relation to or in connection with its other property or its entire business, and not covered by the local tax upon the physical property within the State.

The privilege tax proper is a tax upon the right of the foreign corporation to carry on a local business outside the State of its origin.

The foreign corporation engaged partly or chiefly in interstate business, may be required to pay a privilege tax in respect of that business in any State other than that of its domicil where it does a local business. This tax may be a given sum, or it may be measured by its entire capital, or property, or receipts, or sales, or gross

profits, or net profits, provided the payment of the tax be not made a condition of the granting of the privilege, and provided further that it appears from the circumstances that the tax is reasonable, that is, that it is what it purports to be, a mere privilege or excise tax, and not a tax which actually has the effect of hampering commerce or taxing property beyond the jurisdiction of the State imposing the tax.

A privilege tax as such, measured by the entire property, or capital, or receipts, or profits, gross or net, of a foreign corporation engaged in a local business within a State other than that of its origin, reaches all its property, its receipts or its profits, including that in other States, and hence must be held unconstitutional, unless the circumstances show that the tax is a reasonable one and laid not upon the property but upon the right of the corporation to carry on a local business. And one of the ways in which the reasonableness and the ultimate purpose of the tax may be determined, is the fixing in the statute of a maximum base sum beyond which amount the percentage cannot be allowed to realize. Such a tax will be held prima facie reasonable unless the circumstances compel another conclusion. An instance of a privilege or excise tax measured by a percentage on capital stock uncontrolled by a named maximum sum and held a violation of the commerce clause, is found in *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 38 Sup. Ct. 292. And an instance of a similar tax but its total exaction controlled by a named maximum and held not a violation of the commerce clause, is found in *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 34 Sup. Ct. 15. That the reasonableness of the privilege tax is the test of its validity, appears in *General Railway Signal Co.* v. *Virginia*, 246 U. S. 500, 511, 38 Sup. Ct. 360, where a statute providing for a specific fee of $1,000 upon cor-

porations whose capital stock was between one and ten millions of dollars, was upheld upon the basis of the reasonableness of the fee under all the circumstances, although the case was said to be on the line. When the opinions of the later cases are read in conjunction, I think they will be found to hold that the limitation in a statute of a maximum privilege tax removes these constitutional objections unless the maximum be unreasonably high; that the maximum limitation may serve as evidence of the reasonableness of the tax, and that a privilege tax which is reasonable and is not made a condition of the right to do business can never be held to violate the commerce clause or the due process clause. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 34 Sup. Ct. 15; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, 142, 38 Sup. Ct. 292; *Looney* v. *Crane Co.,* 245 U. S. 178, 38 Sup. Ct. 85; *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500, 38 Sup. Ct. 360.

The majority opinion reiterates that "the tax is a tax on the privilege of doing business in a corporate capacity in this State." Our statute provides no maximum. The greater the real estate and tangible property here to that elsewhere, the greater the amount of tax; and the greater the intangible property outside Connecticut, the greater the tax. The amount to be realized in this case is $12,000; in another case it might be $100,000. Such a tax cannot be held reasonable. The decisions to which I have referred conclusively establish this.

If the majority opinion rested upon this proposition, I might rest my discussion upon what has been said, with the single addition of a discussion of the case of *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 38 Sup. Ct. 499, upon the authority of which the court places its opinion. But the majority opinion goes further. It does not distinguish between these two

classes of so-called privilege taxes, and its chiefest argument in support of this tax is that "if the ascertainment of its amount is made dependent in fact on the value of its property within the State, and if it does not exceed the sum which might be leviable directly thereon," the tax may be levied.

Such a tax, though called a privilege tax, is in truth a species of property tax. It is based upon the value of its property within the State; it increases or diminishes as that increases or diminishes. The tax attacked in this proceeding is one laid upon the net income of the plaintiff, a foreign business corporation, engaged in carrying on a local business in Connecticut. The plaintiff does all of its manufacturing in this State, and most of its sales and all of its financial business it transacts outside of this State. Practically, the production side of its business is here, and the commercial side outside Connecticut. All of its property here, and all of its business here, and all of its earnings here, may be taxed separately or in connection with or in relation to the business as a whole, and to the business as a going concern, provided the amount on which the tax is levied fairly represents the value of its property here, or its earnings made here. When the tax under consideration was authorized, the plaintiff's taxes in this State were confined to a direct property tax on its real estate, plant and tangible property on hand at the levy of the tax. Throughout the year preceding the tax levy, the corporation continued manufacturing its goods and sending its product to its different branches outside our State, where it was sold or rented. While these goods were in process of manufacture, or held in stock, or in course of transit, in this State, they were subject to a State tax, justified upon the basis of all taxes, the protection afforded the goods and the business by the taxing government. And the local business may have

a value beyond the mere property here, because it is a part of an interstate business. Connecticut should have and does have, the right to levy a tax proportioned to the protection afforded by it to the local business of the foreign corporation. This may be accomplished in à case like this by a tax upon all the product made, or upon the earning power of its business located here, or upon the net income derived from the property made here, based upon the value of the property and business here as a part of and in relation to a going concern engaged in interstate business. *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 32 Sup. Ct. 211. Some of the decisions and their holding upon this point are the following: It was held in *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185, 17 Sup. Ct. 604, that a State statute taxing a corporation having an interstate business may levy the tax not only on the tangible property within the State, but on such portion of the earning power of the property as the property in the State bears toward the whole property. And the local business may be taxed as a going business as a condition upon which the corporation may continue to do business in the State. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68–88, 34 Sup. Ct. 15. Although the foreign corporation is engaged in interstate commerce, all of its property within a State is taxable there. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 82, 34 Sup. Ct. 15. And "a legitimate tax" may be laid in a State in part on "the avails or income from the conduct of such commerce." *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 343, 32 Sup. Ct. 211. The capital or earnings, gross or net, of a corporation employed chiefly in interstate commerce, may be taken as a mere measure or index to ascertain the local tax of the foreign corporation doing an interstate business upon its property or its business in the State

levying the tax. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 83, 34 Sup. Ct. 15; *Wells, Fargo & Co.* v. *Nevada,* 248 U. S. 165, 167, 39 Sup. Ct. 62. Such a tax is not a tax upon the property engaged in, or the earnings derived from, interstate commerce; these merely help measure the value of the property or the business of the foreign corporation in the locality of the tax, from which the proper tax is ascertained. *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 454, 38 Sup. Ct. 373; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 163, 31 Sup. Ct. 342. A tax so measured does not unnecessarily burden commerce and does not tax property outside the jurisdiction imposing the tax. *Ohio Tax Cases,* 232 U. S. 576, 34 Sup. Ct. 372.

As I understand the opinion of the court it finally holds that the State may tax "some fractional part of the net income of a foreign corporation engaged in interstate commerce, provided the apportionment is made dependent in fact on the value of its property situated within the State, that the amount of the tax is not excessive regarded as a tax on property within the State, and that there is no discrimination against interstate commerce in the admeasurement or enforce-. ment of the tax." All of the net income may be taken as the measure of a tax upon the value of the property of a foreign corporation in a State where it is doing a local business. With this qualification I am in substantial accord with this proposition.

With that part of the opinion upholding this tax as a privilege tax, as a tax on the privilege of doing business in a corporate capacity in this State, I am not in accord. As a privilege tax as such, the tax cannot be sustained. If the purpose and effect of our statute was to make the tax dependent upon the value of the plaintiff's property here as a going concern, and to measure the tax by the entire net income, I should readily agree

that the tax was valid. But whatever its purpose, its effect is not this; and in the final analysis the real difference between the majority and minority of the court is in the holding that the apportionment of this tax is in fact made dependent on the value of its property within our State. The tax should be proportioned to the value of the property and business in our State, for it is to these our State affords protection. The entire net income of a corporation is taxable at its domicil. But that does not prevent Connecticut from levying a tax for the protection it affords to the local business of the plaintiff, and from using the entire net income to measure this by. The value of the property here must limit the tax here, otherwise the tax would be laid on property outside our State, and, as a consequence, burden interstate commerce. "It is, of course, entirely settled that a State cannot, consistently with the Federal control of interstate commerce, lay such taxes, either upon property rights or upon franchises or privileges, as in effect" either directly or by its necessary operation "to burden such commerce." *Ohio Tax Cases*, 232 U. S. 576, 593, 34 Sup. Ct. 372; *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 38 Sup. Ct. 292; *United States Express Co.* v. *Minnesota*, 223 U. S. 335, 344, 32 Sup. Ct. 211; *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1, 30 Sup. Ct. 190.

Similarly it follows that the income earned by property of the corporation outside of Connecticut cannot be taxed here. To tax this income would be to tax property without our jurisdiction and over which our State never acquired jurisdiction, and for which it never furnished protection. The net income of the plaintiff from the goods sold came in part from the work, material, management and capital at its factory plant, and in part from the maintenance of its branches,

the sale of its goods, the collection of its accounts, the
financing of its business and the maintenance of its
purchasing department, and all of these were without
this State. Each State where the various parts of this
extensive business were carried on had the right to
tax the net income from the business earned by that
part of the business transacted within it. The goods
manufactured in our State and sold outside were tax-
able here upon their value then; or upon the propor-
tion of the gross or net income which the goods made
here had earned. *American Mfg. Co.* v. *St. Louis*, 250
U. S. 459, 463, 39 Sup. Ct. 522. Rentals obtained out-
side Connecticut upon goods made here cannot be
taxed here. Profits from repairs of machines made
outside our State cannot be taxed here. Sales of goods
purchased and sold outside the State, never having
been a part of the business done here nor the profits
made thereon, cannot be taxed here. Dividends, dis-
counts and interest earned outside the State cannot be
taxed here. The net income resulting from the care and
sale of goods in another juridiction which were made
here, cannot be taxed here. Sixteen per cent of the
gross profits were made elsewhere and clearly are not
taxable here. As to the balance, we do not know the
exact net profits earned here and elsewhere. But we
know that the expenses outside the State were nearly
twice the manufacturing cost in Connecticut. It is
common knowledge that the selling and commercial
side of any manufacturing business costs more than the
manufacturing side, and the profits to that side are
correspondingly greater. But if we consider them on a
parity and proportionate to their cost, we find the net
profits to the manufacturing side to be about 28 per
cent of the total; to the sales side 56 per cent; to pro-
ceeds from rental, repairs, etc., outside Connecticut,
16 per cent. If the net profits approximated the gross

profits, Connecticut would be entitled to tax about $400,000 of the net profits. Under the rule adopted by the statute the State taxed about $600,000.

The portion of the net income upon which the tax is to be laid under our statute in the case of a company like the plaintiff, deriving profits principally from the sale or use of tangible personal property, is such proportion as the fair cash value of its real estate and tangible personal property in this State at the close of the fiscal year next preceding, is to the fair cash value of its entire real estate and tangible personal property then owned by it.

In the case at bar, the finding does not specifically detail all of the property of the plaintiff outside the State. But we know that it was a large amount, from the sales made, and we know that a business of its volume will have a large cash balance and open accounts and bills receivable, and patents and contracts, aggregating thousands and probably millions in value.

The interest earned, $29,456, showed that the plaintiff carried a large cash balance. The dividends received indicated a substantial investment account. These intangible assets enabled the plaintiff to do its business in Connecticut and to do a business outside of Connecticut, aggregating gross profits from rentals in the fiscal year of over $600,000; from repairs of over $452,000, and gross profits from merchandise of over $190,000.

All of these elements of gross profits and the income from intangible assets earned outside the State, helped make up the net income upon which the plaintiff's tax was measured.

Omitting the intangible property of the plaintiff outside of Connecticut, diminishes the denominator of the fraction by which the proportion of the net income is found, and as a consequence, since the numerator re-

mains stationary, gives to the State a greater proportion of the net income on which to levy the tax than it is entitled to, for this gives it a proportion of the net income earned by the assets outside our State. The tax laid upon that part of the net income earned outside the State is a tax laid upon the property of a foreign corporation located outside the State, and necessarily burdens commerce.

If the real estate and tangible personal property comprised all of the property of the plaintiff, this proportion would ordinarily measure the tax without discrimination, and if the tax was general and not unreasonable in amount or rate, it would approximate a fair result. But the proportion fixed by the statute holds, although a substantial part, perhaps half or more, of the property from which the net income has been earned, is outside the State. This is the vice of the statute. It permits taxes upon net income earned outside the State.

The majority opinion says the tax imposed in this case is insignificant, only two-tenths of 1% of the gross income, about $12,000, and that such a sum for so great a corporation is a trifle. I do not follow all of the mathematics of the opinion of the court. But whether the figures are correct or not, is not important in this connection. The smallness of the tax does not make the tax constitutional, if in fact it taxes property outside the State levying the tax. Mr. Justice VanDevanter, in *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 144, 38 Sup. Ct. 292, thus disposes of this point: "It is thus manifest on the face of all of the cases that they in no way sustained the assumption that because a violation of the Constitution was not a large one it would be sanctioned, or that a mere opinion as to the degree of wrong which would arise if the Constitution were violated was treated as affording a measure of the duty of enforcing the Constitution."

The court rests its decision, so far as the commerce clause is concerned, upon *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, 38 Sup. Ct. 499, which it assumes decides, that "under the form of a privilege tax," a State may "tax some fractional part of the net income of a foreign corporation engaged in interstate commerce, provided the apportionment is made dependent in fact on the value of the property situated within the State, that the amount of the tax is not excessive regarded as a tax on property within the State, and that there is no discrimination against interstate commerce in the admeasurement or enforcement of the tax."

I do not find this doctrine announced in the *Glue Co.* case. That opinion does not, as I think, change or attempt to change the law, which had become practically settled with *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1, 30 Sup. Ct. 190, and succeeding cases, upon whose authority this dissent is based.

The only point decided was thus stated by Mr. Justice Pitney, on page 326: "Stated concisely, the question is whether a State, in levying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce without contravening the commerce clause of the Constitution of the United States." The issue concerned the commerce clause, and the due process clause issue, also raised in this case, is quite independent of the commerce clause. *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 38 Sup. Ct. 292. The tax could have been sustained as an exercise of control over the net income of its own corporation by the State of its origin. It could have been sustained upon the specific provision of the statute. "The tax shall be assessed . . . upon all income . . . provided, that any person engaged in

business within and without the State shall, with respect to income other than that derived from rentals, stocks, bonds, securities or evidences of indebtedness, be taxed only upon that proportion of such income as is derived from business transacted and property located within the State. . . ." Wisconsin Session Laws, 1911, Chap. 658, § 3. This statutory exemption follows the decisions. Our statute contains no such provision; and, as it seems to me, our court treats the case as if this provision were in our statute. And it fails to note the significance of the fact that the question at issue concerned a domestic corporation and did not concern the taxing of a foreign corporation upon profits received by it outside the jurisdiction of the State imposing the tax.

The Wisconsin tax on net income was one substantially in lieu of all other taxes except those on real estate. It included all other forms of property tax, and also all forms of excise tax. The reasoning of Mr. Justice Pitney, that the tax on the net income of this domestic corporation engaged in interstate business is an indirect burden upon commerce and hence valid, does not seem to be applicable to the tax on the net income of a foreign corporation arising from its interstate commerce. And certainly it can have no application to the net income of this corporation which was earned upon that part of the property or business located here.

I conceive that the fundamental justification for a tax upon the net income of a foreign corporation is that the income taxed is subject to the State's jurisdiction and that the tax laid does not hamper commerce. The fact that the tax is merely an indirect burden on commerce, will not save it if the property or income taxed be that of a foreign corporation and the property be located, or the income be earned, outside the State.

The language of Mr. Justice Pitney which the opinion

of the court quotes and relies upon as decisive of this case, should be read in connection with the entire opinion, and as read it should be remembered that it was said in reference to a domestic corporation, and of a tax upon income derived from business transacted and property located within the State, and is to be applied to the sole question involved, whether the tax was a burden on commerce. Read and applied as our court reads and applies the *Glue Co.* case, as it seems to me, it practically treats as overruled the authorities from *Western Union Tel. Co.* v. *Kansas* (1909), 216 U. S. 1, 30 Sup. Ct. 190, down.

All taxes upon a foreign corporation engaged in local business outside its domicil, are indirect burdens on commerce. When levied on property physically within the State, or imposed upon the privilege of doing business in the State, or levied upon the value of property of the corporation within the State, such taxes may be valid exactions. But when levied upon property outside a State, or when the tax exaction is unreasonable, they are invalid; and it makes no difference whether the measure of the tax be net income or gross income.

The tax on the net income in *Peck & Co.* v. *Lowe*, 247 U. S. 165, 173, 38 Sup. Ct. 432, was a tax upon the net income of a domestic corporation, so far as the United States was concerned, by the country of its domicil; and the tax upon the net income of the United States Glue Company was a tax upon the net income of a domestic corporation by Wisconsin, the State of its domicil. There can be no violation of the commerce clause by a tax laid on the net income of a corporation by the State or country of its domicil. All of such income must respond to the valid exactions of government.

A tax on net income of a foreign corporation propor-

tioned to the earnings in the State imposing the tax does not burden commerce. When the tax goes beyond this and taxes earnings made outside that State, it is a tax upon property outside its jurisdiction and violates the "due process" clause, and as a consequence necessarily burdens commerce.

The authorities from *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1, 30 Sup. Ct. 190, left the subject of taxation, always difficult and somewhat obscure, reasonably clear, and I find it hard to persuade myself as my brethren seem to think, that there has been a determination to substitute a new theory of the indirect burden of the net income tax for the doctrine of those cases. A tax by a State on the gross income or the capital as such, of a foreign corporation, necessarily burdens commerce and taxes property outside the State. The same holding must in logic follow as to net income. "A tax upon a corporation may be proportioned to the income received as well as to the value of the franchise granted or the property possessed." *The Delaware Railroad Tax*, 85 U. S. (18 Wall.) 206.

I am of the opinion that questions one and two, upon which our advice is asked, should be answered "Yes."