BEATRICE DONCOURT ET ALS. *v.* CORNELIUS J. DANAHER ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 7—decided June 13, 1940.

*Thomas R. FitzSimmons,* for the appellants (plaintiffs).

*Frank J. DiSesa,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (named defendant).

MALTBIE, C. J.   This is an action brought by the plaintiff Doncourt, a woman entertainer, her former employers, and a voluntary association of women entertainers in Bridgeport, seeking an injunction restraining the defendants from taking any steps to enforce a provision of § 1605c of the General Statutes, Cum. Sup. 1935, which is quoted in the footnote.[1] The trial court refused to grant the injunction and the plaintiffs have appealed.   The provision in question is that which prohibits the employment of women in the establishments mentioned in the statute between the hours of 10 o'clock in the evening and 6 o'clock in the morning.   It is claimed that this provision should be construed so as to exempt from its

---

[1] Sec. 1605c.   HOURS OF MINORS AND WOMEN IN CERTAIN ESTABLISHMENTS.   No public restaurant, cafe, dining room, barber shop, hairdressing or manicuring establishment or photograph gallery shall employ or permit to work any minor under sixteen years of age or any female, between the hours of ten o'clock in the evening and six o'clock in the morning, or more than nine hours in any day, except that any such person may be permitted to work in any such establishment one day in a week for not more than ten hours on such day, but not more than six days or fifty-two hours in any one week.   The hours of labor of such minors or women shall be conspicuously posted in such establishment in such form and manner as the commissioner of labor and factory inspection shall determine.   The provisions of this section shall not affect hotels.   Any person who shall violate any provision of this section shall be fined not more than one hundred dollars for each offense.

operation women engaged in occupations such as that followed by the plaintiff Doncourt and the members of the association, or, if this is not done, that the provision is void as an illegal interference with their constitutional rights and also that the exception of hotels from the act produces an unconstitutional discrimination.

The finding, corrected in certain respects, presents the following situation: The plaintiff Doncourt, who pursued a musical education for some twelve years, has been principally engaged as an entertainer, playing the piano and piano accordion. For some three years she was employed by the plaintiffs Rudis at a restaurant conducted by them, her usual hours of employment covering the period from 9 p. m. to 1 a. m. The members of the plaintiff association are women engaged in similar occupation, employed during substantially the same hours. The labor commissioner of the state and the prosecutor of the town court of the town where the restaurant is located caused notices to be served upon the plaintiff Doncourt's employers that they must cease to employ her after 10 o'clock at night. As the need for her services is mostly after that hour, they terminated her engagement. Since then she has not been able to find anything more than occasional work because there is little demand for services of the kind she renders except in restaurants and like places, where similar situations with reference to the hours of employment exist. This is also generally true of the other members of the plaintiff association and the positions formerly held by them are now largely filled by men entertainers. The average time spent by women entertainers in their performances on any one night is between eight and twelve minutes, or, if there is more than one engagement for that night, not over thirty minutes. The work done

by these women is not laborious, exacting or injurious to their health and is not similar to that done by many other women employees in restaurants, as, for example, cashiers, waitresses, checkroom girls and scrubwomen. The plaintiff Doncourt and the members of the association are not permitted by the rules of their employment to mingle with visitors to the restaurant. There is nothing in the work they do which affects the health or morals of the patrons of the restaurant.

The terms of the statute, including all women employed in the establishments named, are inclusive; there is no ambiguity in its provisions, and there is nothing in them to suggest any intent to restrict its scope as regards such women. It would transcend proper judicial construction for us to hold that there was an implied exception from the statute of women employed as are these women entertainers. Indeed, for the court to attempt to make such an exception as claimed in this case would impose upon it the obligation of considering the conditions of employment of each woman or group of women working in the establishments named, with a view to determining whether there is sufficient reason to include them, and this would go far beyond the proper function of the court. If exceptions are to be made, it is for the Legislature to determine them and define their limitations. *State* v. *Nelson,* 126 Conn. 412, 416, 11 Atl. (2d) 856.

In 1909 the Legislature passed a statute prohibiting the employment of women in any manufacturing, mechanical or mercantile establishment after 10 o'clock at night; Public Acts, 1909, Chap. 220, § 3; in 1919 this statute was amended to prohibit the employment of women between the hours of 10 o'clock in the evening and 6 o'clock in the morning, with a proviso giving the Governor certain authority to suspend the operation of the law in the event of war or other

serious emergency; Public Acts, 1919, Chap. 195; and although the statute has several times been amended as to details, such a provision has ever since been in force, except that physicians, surgeons, nurses, pharmacists, attorneys at law, teachers and women engaged in social service work are now excepted. General Statutes, § 5194, 1939 Supplement, § 1319e. In 1917 the statute with which we are now concerned was first passed; Public Acts, 1917, Chap. 300; and it also has been several times amended as to details. It thus appears that with certain express exceptions and the omission of women engaged in certain occupations, notably domestic service and office work, where the Legislature might reasonably consider that there was least likelihood of harm from night work by them, it has been for a considerable time a settled legislative policy in this state to prohibit women from working in most of the occupations open to them between the hours named in the statute. Nor is the tendency to prohibit such work by women confined to this state. In 1906 the International Association for Labor Legislation adopted a convention which by 1912 had been signed by practically all European states prohibiting night work by women in industry. Hutchins & Harrison, History of Factory Legislation, 271; *People* v. *Charles Schweinler Press*, 214 N. Y. 395, 403, 108 N. E. 639. At least thirteen of the states in this country other than ours have provisions prohibiting night work by women, although the hours of work permitted and the scope of employments covered vary, and the statutes of none of them are as inclusive as are ours. United States Department of Labor, Bulletin of Women's Bureau, No. 156-II (1938).

Since the decision in *Muller* v. *Oregon,* 208 U. S. 412, 28 Sup. Ct. 324, it is no longer open to question that a legislature may, generally speaking, constitu-

tionally limit the hours of the labor of women. *Riley v. Massachusetts,* 232 U. S. 671, 679, 34 Sup. Ct. 469; *Miller* v. *Wilson,* 236 U. S. 373, 380, 35 Sup. Ct. 373; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, 394, 57 Sup. Ct. 578. In *People* v. *Williams,* 189 N. Y. 131, 81 N. E. 778, it was held that a law forbidding the employment of women in factories before 6 o'clock in the morning or after 9 o'clock at night was unconstitutional as an illegal interference with constitutional rights. However, in *People* v. *Charles Schweinler Press,* supra, a similar law, except that the evening hour was fixed at 10 o'clock instead of 9 o'clock, was upheld, the court stating that its conclusion was reached in the light of wider information made available to it as to the effect of night work upon women and the growth of opinion that injurious results were likely to follow. The opinion in that case quotes from the report of a special committee appointed by the New York Legislature to investigate labor in factories, as follows (p. 403): "The chief danger of health from night work is . . . due to the inevitable lack of sleep and sunlight. Recuperation from fatigue takes place fully only in sleep, and best, in sleep at night. Hence, night work is, in a word, against nature. When exhausting factory work fills the night, and household work most of the day, health must inevitably be sacrificed. This injury to health is all the greater, because sleep lost at night by working women is never fully made up by day. For, in the first place, sleep in the daytime is not equal in recuperative power to sleep at night. . . . Moreover, quiet and privacy for sleep by day is almost impossible to secure. Upon returning home in the middle of the night or at dawn the workers can snatch at most only a few hours rest."

In *Radice* v. *New York,* 264 U. S. 292, 44 Sup. Ct. 325, a statute of New York prohibiting the employ-

ment of women in restaurants in large cities between the hours of 10 p. m. and 6 a. m. was sustained as not an arbitrary and illegal interference with the liberty of contract of women and their employers and was justified as a health measure. The court stated (p. 294): "The legislature had before it a mass of information from which it concluded that night work is substantially and especially detrimental to the health of women. We cannot say that the conclusion is without warrant. The loss of restful night's sleep can not be fully made up by sleep in the day time, especially in busy cities, subject to the disturbances incident to modern life. The injurious consequences were thought by the legislature to bear more heavily against women than men, and, considering their more delicate organism, there would seem to be good reason for so thinking. The fact, assuming it to be such, properly may be made the basis of legislation applicable only to women. Testimony was given upon the trial to the effect that the night work in question was not harmful; but we do not find it convincing. Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the legislature; and if the question of what the facts establish be a fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker. The state legislature here determined that night employment of the character specified was sufficiently detrimental to the health and welfare of women engaging in it to justify its suppression; and, since we are unable to say that the finding is clearly unfounded, we are precluded from reviewing the legislative determination."

Apart from the effect night work for women may

have upon their health, the nature of the establishments mentioned in the statute suggests that the Legislature also had in mind the prevention of immorality which might result from employment in them of women after 10 o'clock at night, and such considerations are of course a valid ground for the exercise of the police power. *State* v. *Nelson,* 126 Conn. 412, 425, 11 Atl. (2d) 856. We cannot hold that the Legislature constitutionally lacks power to forbid the employment of women in the establishments mentioned in the statute between the hours of 10 o'clock in the evening and 6 o'clock in the morning.

The court has found that the health of the plaintiff Doncourt and the members of the plaintiff association does not suffer from their employment and that the morals of the customers at the restaurants where they work are not affected; and so it may be that the statute would have little, if any, justification if the prohibition were limited to women employed as they are. Legislation of this nature must necessarily be in general terms and the statute in question applies, as regards restaurants, not only to entertainers but also to all other women employed there, it may well be in tasks which are laborious and exacting, such as cooks, waitresses, scrubwomen and the like. Although in this case the court has found that the employment of the plaintiff does not in any way affect the morals of the customers or patrons of the restaurant in which she has worked, it by no means follows that the same situation would exist in other establishments of a like character. That a law, general in its application, has little justification as regards certain individuals within its scope and imposes upon them peculiar hardships, is not a basis for holding it invalid if it applies equally to all within the classification and as a general rule substantially promotes public health, morals or the

general welfare. *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 577, 35 Sup. Ct. 167; *Dominion Hotel, Inc.* v. *Arizona,* 249 U. S. 265, 269, 39 Sup. Ct. 273; *H. Duys & Co., Inc.* v. *Tone,* 125 Conn. 300, 311, 5 Atl. (2d) 23; *People* v. *Elerding,* 254 Ill. 579, 587, 98 N. E. 982; *State* v. *Somerville,* 67 Wash. 638, 640, 122 Pac. 324; and see *Strain* v. *Mims,* 123 Conn. 275, 286, 193 Atl. 754; *Levine* v. *Board of Adjustment of New Britain,* 125 Conn. 478, 485, 7 Atl. (2d) 222.

Nor does the exception of hotels from the act justify us in holding the law invalid as making an unconstitutional discrimination. In *Miller* v. *Wilson,* 236 U. S. 373, 35 Sup. Ct. 342, the United States Supreme Court sustained a statute limiting the hours of employment of women in certain establishments, including hotels, against the claim that it was illegally discriminatory in that it did not apply to boarding and lodging houses and the like and that the classification was based upon the nature of the employer's business and not upon the character of the employee's work; the court said (p. 382): "With respect to the last of these objections, it is sufficient to say that the character of the work may largely depend upon the nature and incidents of the business in connection with which the work is done. The legislature is not debarred from classifying according to general considerations and with regard to prevailing conditions; otherwise, there could be no legislative power to classify. For it is always possible by analysis to discover inequalities as to some persons or things embraced within any specified class. A classification based simply on a general description of work would almost certainly bring within the class a host of individual instances exhibiting very wide differences; it is impossible to deny to the legislature the authority to take account of these differences and to do this according to practical groupings in which, while

certain individual distinctions may still exist, the group selected will as a whole fairly present a class in itself. Frequently such groupings may be made with respect to the general nature of the business in which the work is performed; and, where a distinction based on the nature of the business is not an unreasonable one considered in its general application, the classification is not to be condemned. See *Louisville & Nashville Railroad* v. *Melton*, 218 U. S. 36, 53, 54 [30 Sup. Ct. 676]. Hotels, as a class, are distinct establishments not only in their relative size but in the fact that they maintain a special organization to supply a distinct and exacting service. They are adapted to the needs of strangers and travelers who are served indiscriminately. As the state court pointed out, the women employés in hotels are for the most part chambermaids and waitresses; and it cannot be said that the conditions of work are identical with those which obtain in establishments of a different character, or that it was beyond the legislative power to recognize the differences that exist." See s. c. *Matter of Application of Miller*, 162 Cal. 687, 698, 124 Pac. 427. In *Dominion Hotel, Inc.* v. *Arizona*, supra, the court sustained, as against the claim of illegal discrimination, a statute restricting the hours of labor for women in hotels, with an exception including certain railroad restaurants or eating houses.

In the instant case we cannot hold that the Legislature might not legally except women employed in hotels. Not only might it deem that conditions of employment in them were substantially different from those in the establishments mentioned in the statute, but it might also properly consider that the night employment of women in certain capacities in hotels was practically necessary in order reasonably to perform a proper service to the public, and that it was not practi-

cable to discriminate between these women and others employed there. *Dominion Hotel, Inc.* v. *Arizona,* supra, 268; *Murphy* v. *Bergin,* 118 Conn. 249, 262, 171 Atl. 433. The exception of hotels from the law did not constitute an illegal discrimination. See *Silver* v. *Silver,* 108 Conn. 371, 376, 143 Atl. 240; *State* v. *Cullum,* 110 Conn. 291, 294, 127 Atl. 804.

We agree with the trial court that the prohibition in question applies to the employment pursued by the plaintiff Doncourt and the members of the plaintiff association and constitutes a valid exercise by the Legislature of its police power.

There is no error.

In this opinion the other judges concurred.