SPECTOR MOTOR SERVICE, INC. *v.* WALTER W. WALSH, - TAX COMMISSIONER

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

38

Argued May 6—decided July 21, 1948

*Frank J. DiSesa,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the appellant (defendant).

*Cyril Coleman,* for the appellee (plaintiff).

MALTBIE, C. J.   This action presents questions as to the validity and construction of the Corporation Business Tax Act of 1935, Cum. Sup. 1935, Chap. 66b, § 416c et seq., as amended, with reference to a corporation engaged in interstate motor freight service.   The action sought a declaratory judgment, and the trial court held that the plaintiff was within the terms of the act, that the act did not as applied to it violate the constitution of this state and that the assessments were not illegal because computed on an improper basis, but that the act as applied to the plaintiff was unconstitutional under the constitution of the United States. The defendant has appealed.

The controversy between the parties has been the subject of protracted litigation in the federal courts. The plaintiff brought an action in the United States District Court for the District of Connecticut in which it asked a judgment declaring that the act as applied to it was unconstitutional under both the federal and our own constitutions, that the computations by which the amount of the tax was determined by the defendant, the state tax commissioner, were not authorized by the applicable statutes and that they were inaccurate; and the plaintiff also prayed that the commissioner be enjoined from proceeding against it to enforce

the tax. The District Court held that the plaintiff was not subject to the tax and directed that an injunction be issued. *Spector Motor Service, Inc.* v. *McLaughlin,* 47 F. Sup. 671. The case was appealed to the Circuit Court of Appeals for the Second Circuit, which, by a divided court, reversed the judgment of the District Court and directed judgment for the defendant. *Spector Motor Service, Inc.* v. *Walsh,* 139 F. 2d 809. The action was then brought by certiorari to the United States Supreme Court, where it was held that until certain questions as to the interpretation and application of the statute were first determined by the courts of Connecticut the issue as to the constitutionality of the act could not properly be decided in the federal courts; *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101, 65 S. Ct. 152, 89 L. Ed. 101; and the rescript in that case was (p. 106): "We therefore vacate the judgment of the Circuit Court of Appeals and remand the cause to the District Court with directions to retain the bill pending the determination of proceedings to be brought with reasonable promptitude in the State court in conformity with this opinion."

The opinion of the Supreme Court was handed down on December 4, 1944; the action before us, evidently brought to the Superior Court in compliance with that mandate, was begun by writ dated December 21, 1944. Why the trial did not take place until April, 1947, we do not know. At any rate, we assume that the requirement in the mandate of the United States Supreme Court that proceedings be brought in the courts of this state with reasonable promptness will be found to have been complied with. On that basis, the function we are to perform is limited in its scope. The case brought in the District Court, with its basic issues concerning the constitutionality of the tax as applied to

the plaintiff, is still pending there; and it is not for us to trench upon its right to decide those issues. Nor is it for us to quarrel with the decision of the Circuit Court of Appeals, affirmed by the Supreme Court, that our courts are lacking in any means of plain, speedy and efficient remedy for a settlement of the controversy between the parties which, if present, would debar the federal courts from taking jurisdiction. However, we do point out that our declaratory judgment act is broader than those in most, if not all, other jurisdictions; *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 133 Conn. 403, 409, 51 A. 2d 907; and, in a case where an important constitutional question needed speedy determination, this court decided on April 10, 1947, an action brought to the Superior Court by writ dated March 14, 1947, and reserved to us. *Lyman* v. *Adorno*, 133 Conn. 511, 52 A. 2d 702. Should we determine in an action for a declaratory judgment that the application of the statute to the plaintiff was unconstitutional, the tax commissioner would, of course, accede to that decision; and an injunction to restrain him from any attempt to collect the tax would be supererogatory. Nor are we willing to let pass unnoticed the statement that under our law there is serious doubt whether an injunction such as that sought in the District Court would issue in our courts. We have held that, to the general rule that our courts are reluctant to grant injunctions against the collection of taxes, there is a well-recognized exception where property against which an assessment is made is exempt by law from taxation; *New London* v. *Perkins,* 87 Conn. 229, 235, 87 A. 724; *Wilcox* v. *Madison,* 106 Conn. 223, 227, 137 A. 742; certainly there is no reason to doubt that our courts would enjoin the collection of a tax found due from a single person where it has been adjudged to be unconstitutional; and

this is particularly so where a state tax is involved and, hence, if paid, could not be recovered by an action in the courts. The plaintiff might have secured in the courts of this state the very relief which it sought in the District Court; and we refrain from comment upon the long delay which must ensue before a final settlement of the controversy can be reached, due to its invocation of the jurisdiction of the federal courts.[1]

[1] We also note that in the opinion of the Circuit Court (*Spector Motor Service, Inc.* v. *Walsh*, 139 F. 2d 809, 820), where it discusses our rule that one cannot appeal under a particular statute and in that appeal attack the constitutionality of the law, the case of *Holley* v. *Sunderland*, 110 Conn. 80, 85, 147 A. 300, is cited as supporting the rule, and it is then said that in the later case of *Connecticut Baptist Convention* v. *McCarthy*, 128 Conn. 701, 25 A. 2d 656, we did on an appeal taken under the same statute consider a claim that the law was unconstitutional. The Circuit Court overlooked the fact that the second case came before us on a reservation in which two definite interrogatories were submitted to us for our advice, as may be done under our practice. Practice Book § 421. Our sole concern was with those specific questions, and the disposition of the case which the trial court might make in the light of our answers was not before us for review. That is why we said in the *Connecticut Baptist Convention* case that, while the question of the constitutionality of the act had been raised in two cases, one of which was the *Holley* case, it had never been so presented that we were called upon to decide it, and why in the *Connecticut Baptist Convention* case we could properly consider it. Moreover, the reason for the rule in the *Holley* case is thus stated in *National Transportation Co.* v. *Toquet*, 123 Conn. 468, 478, 196 A. 344: ". . . as the appeal itself lies only by virtue of the regulation, to hold that regulation void would destroy the basis of the appeal itself. . . . The principle is the same as that which denies to a party who bases an action upon the provisions of a particular statute the right to claim in that action that the statute is invalid." See *Wall* v. *Parrot Silver & Copper Co.*, 244 U. S. 407, 411, 37 S. Ct. 609, 61 L. Ed. 1229. We have never held that, where on such an appeal the validity of the statute as a whole is not attacked, but the issue is only whether it applies or properly can apply to the particular appellant, the question may not be determined; and that was precisely what was done in *Slater Mills* v. *Gilpatric*, 97 Conn. 521, 117 A. 806, and in *Underwood Typewriter Co.* v. *Chamberlain*, 94 Conn. 47, 108 A. 154, in appeals under the predecessor of the statute now before us.

As we interpret the decision of the United States Supreme Court, it states three questions which we are to answer: Was it the intention of the General Assembly, as evidenced in the statute, to impose the tax upon persons engaged in interstate commerce in pursuit of the type of business in which the plaintiff was engaged? If so, what aspect of its business was intended to be made the subject of the tax? Finally, upon what basis was it intended that the tax should be computed? *Spector Motor Service, Inc.* v. *McLaughlin*, 323 U. S. 101, 104, 65 S. Ct. 152, 89 L. Ed. 101. We assume also that it is proper for us to determine whether the tax violated in any respect the constitution of this state, for the question of the meaning and effect of a state constitution, we understand, is as much a matter for the determination of the courts of the state as is the meaning and effect of one of its statutes; *Glenn* v. *Field Packing Co.*, 290 U. S. 177, 178, 54 S. Ct. 138, 78 L. Ed. 252; and it is also well within our proper function to determine whether the amount of the tax has been properly determined under our statutes.

The complaint in this action alleges that the defendant tax commissioner assessed a certain tax against the plaintiff for the years ending May 31, 1936, and May 31, 1937, under the Corporation Business Tax Act of 1935, and also, under an amendment to that act made in 1937, certain taxes for the year ending May 31, 1938, the seven months ending December 31, 1938, and the years ending December 31, 1939, and December 31, 1940. The act of 1935 took effect on July 1, 1935; Cum. Sup. 1935, § 441c; the 1937 amendment took effect upon its passage; Public Acts, 1937, Chap. 422, § 6; that meant when it was signed by the governor; *Old Saybrook* v. *Public Utilities Commission*, 100 Conn. 322, 325, 124 A. 33; and he signed it on June 11,

1937. We regard the allegations of the complaint as a concession that the validity of the first two assessments is to be determined under the law as it stood in 1935 and of the others under the law as amended in 1937; Cum. Sup. 1939, § 354e; nor have the parties claimed otherwise either in the trial court or before us.

The finding of the trial court and the exhibits made a part of it present the following situation: The plaintiff is a Missouri corporation. It originally had its principal place of business in St. Louis but later moved to Chicago. Its business, during the period involved in this action, was exclusively the transportation of freight in interstate commerce as a common carrier. Originally, it carried freight only from St. Louis to New York, but, in order to secure the advantages of a two-way haul, it set up facilities to obtain goods for shipment from the east to the west and, in particular, shipment of less than full truck loads. In addition to its terminals in St. Louis and New York, it set up terminals in Chicago, in New Britain and Bridgeport, Connecticut, and in cities in Massachusetts, Rhode Island and New Jersey. Where a full truck load is to be shipped to or from any customer in Connecticut, trucks making the long haul go directly to the customer's place of business. In case of smaller shipments, the freight is taken from the customer's place of business by pickup trucks to the terminal, where it is transshipped to the long-haul trucks. The pickup trucks merely act as a part of the interstate transportation of the freight. The business of the company as outlined above was established prior to the enactment by the Congress of the "Motor Carrier Act, 1935"; 49 Stat. 543, 49 U. S. C. § 301 (1940) at seq.; it carried on its business thereafter under a provision in that act allowing it to continue to operate as it was doing on June 1, 1935, until in February, 1942, it received a

permit from the interstate commerce commission. Of its total business during the years 1936 to 1940, the following portions originated in, was attributable to or was derived from this state: 1936, 47 per cent of a total business of $233,787.78; 1937, 37.86 per cent of a total business of $440,025.92; first five months of 1938, 47 per cent of a total business of $318,786.85; last seven months of 1938, 50 per cent of a total business of $432,-087.39; 1939, 42 per cent of a total business of $1,202,-210.35; 1940, 34 per cent of a total business of $1,723,510.65.

The plaintiff uses in the operation of its business about 85 trucks or tractors and 115 trailers. Most of these are leased from the Wallace Transport Company. This is a corporation organized by officers of the plaintiff; the plaintiff furnished the money to purchase the vehicles; and all the capital stock of the Transport Company is owned by the same four persons who own all the stock of the plaintiff, that is, its two principal officers and their wives. The Transport Company was organized under the laws of Illinois for the purpose of securing certain advantages in reciprocity agreements between that state and other states and to avoid certain taxes which would otherwise be imposed upon it by states through which it carries freight. All the drivers of the trucks are employees of and are paid by the plaintiff. Several of the pickup trucks are registered with the motor vehicle department of Connecticut in the name of the plaintiff, and during the years involved in this action it obtained permits to purchase tires from the rationing board at New Britain for its commercial vehicles registered in this state. It leases its terminals at New Britain and Bridgeport. It owns personal property in Connecticut consisting of office equipment valued at $1500 to $2000, upon which it pays property taxes in New Britain. It has a bank ac-

count in Bridgeport for the deposit of cash payments made by shippers, but no one in this state has authority to draw upon it; all checks received in this state are sent to Chicago and cash received at New Britain is converted into bank drafts and sent to Chicago; and, except for a small amount of cash kept at New Britain to pay incidental expenses, all expenses and wages of employees are paid by draft on the plaintiff at Chicago. The plaintiff employed ten persons at Bridgeport and seventeen persons at New Britain; of these, five persons, employed two or three at a time, were engaged in soliciting business, straightening out complaints and generally promoting the plaintiff's business.

In connection with the leasing of its terminal at New Britain, the landlord insisted that the plaintiff qualify in Connecticut as a foreign corporation and name the secretary of the state as its agent for service so that it would be subject to the jurisdiction of our courts in the event that litigation should arise out of the lease; the plaintiff did so qualify on May 5, 1934; this was apparently done under § 3489 of the General Statutes, which provides that every foreign corporation having an office or place of business in this state shall, before entering upon such business, appoint the secretary of the state its attorney for the service of process; but the plaintiff never otherwise applied for or received authority to do business in this state, and its business is limited entirely to interstate commerce as specified by permits from the Connecticut public utilities commission. In accordance with the requirement of the Motor Carrier Act, 1935, 49 Stat. 564, 49 U. S. C. § 321(c) (1940), it also designated a person in New Haven upon whom process might be served.

Under the appellate procedure in this state, we are bound to take the finding of facts made by the trial court as conclusive, unless on proper assignments of

error we add facts which are admitted or undisputed or strike out findings made without evidence to 'support them or correct a finding made in language of doubtful meaning. Practice Book § 353. The plaintiff seeks neither corrections in nor additions to the finding. The defendant seeks certain additions and corrections, but we can make none material to the issues before us. We note that a considerable amount of the testimony and certain of the exhibits concern matters which occurred after the period for which the assessments in this case were made and so are only indirectly, if at all, relevant to the issues presented by the pleadings. For example, the federal interstate motor carrier permit under which the plaintiff now operates, as to which there is much testimony, was not issued until February 10, 1942, while the last year involved in the assessments before us was 1940; and the only significance of that permit was that in the main it permitted the plaintiff to continue the same operations upon which it had been engaged on June 1, 1935. Arguments of counsel have also dealt with matters not germane to the specific issues before us. We have confined ourselves to the law, facts and evidence bearing upon the validity of the particular assessments in question in this proceeding.

We consider first the question whether the business carried on by the plaintiff is within the purview of the act imposing the corporation business tax. The statute under which the taxes involved in this action were imposed was originally enacted as the result of a report (Report on Taxation of Certain Corporations [1913]) of a special commission appointed pursuant to an act of the General Assembly passed in 1911 to examine the matter of taxing corporations in this state. Public Acts, 1911, Chap. 283, § 2. The recommendations of that commission were almost all enacted into law at

the legislative sessions of 1913 and 1915. See *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 304, 57 A. 2d 128. Part 4 of chapter 292 of the Public Acts of 1915 was headed "Miscellaneous Corporations," and it is the predecessor of the Corporation Business Tax Act of 1935. It imposed a tax upon certain "companies" based upon their net earnings; and in § 19 it defined "company" as including "every corporation, joint stock company or association carrying on business in this state which is required to report to the collector of internal revenue for the district in which such company has its principal place of business for the purpose of the assessment, collection, and payment of an income tax," with the exception of corporations as to which either in the same chapter or in chapter 188 of the Public Acts of 1913 special provision had been made, or which were not considered subject to a state tax, as in the case of banking institutions organized under the laws of the United States. The chapter provided for a tax not only upon domestic corporations but, under § 22, upon any company which "carries on business outside of this state," with provisions for the apportionment of a part of the net income as the basis of the tax. In the case of a corporation doing business outside the state which derived profits "principally from the sale or use of tangible personal property," the proportion of the net income allocated to this state was based upon the ratio which the value of its real and tangible personal property in this state bore to the value of its entire real estate and tangible personal property. The definition of "company" remained the same until 1935, when its language was changed although its substance was not altered in any respect material to the issues before us; General Statutes, Cum. Sup. 1935, § 417c; but provisions for the allocation to this state of a portion of the net income of com-

panies doing business outside the state were materially changed. Cum. Sup. 1935, § 420c. We shall later refer at some length to the basis of that allocation, but for our present purposes it is only necessary to note that the allocation in this case could only be made by virtue of provisions beginning, "when derived from the manufacture, sale or use of tangible personal or real property" in this state. In 1937 the definition quoted above from the 1915 act was altered so that, for the words "carrying on business in this state," there were substituted the words "carrying on, or having the right to carry on, business in this state"; Sup. 1937, § 255d; Cum. Sup. 1939, § 354e; but the words above quoted from the section of the 1935 act concerning the basis for the allocation of net income where a company does business outside the state remained unchanged in the 1939 amendment. Cum. Sup. 1939, § 356e.

There can be no question that the plaintiff was doing business within this state, though that business was interstate in character. As we shall point out later, the tax imposed is upon the franchise or privilege of a corporation to do business within the state; and nothing in the statute indicates an intent to tax only domestic corporations carrying on interstate business. In *Underwood Typewriter Co.* v. *Chamberlain*, 94 Conn. 47, 108 A. 154, involving the 1915 act, we expressly stated (p. 55) that it applied alike to foreign and domestic companies; and in *Slater Mills, Inc.* v. *Gilpatric*, 97 Conn. 521, 117 A. 806, we held that the statute applied to a Massachusetts corporation doing business in this state. If there could be any doubt that such a business as that of the plaintiff was within the purview of the act, it is removed by two amendments to the act. At the 1935 session of the General Assembly, another provision of our laws which imposed a tax upon the gross income from unincorporated busi-

ness was amended to exclude income of "motor transportation business from interstate commerce"; Cum. Sup. 1935, § 458c; and had the General Assembly intended a like exclusion in the case of business corporations it would no doubt have so stated. At the 1937 session, as we have noted, the act was made to apply not only to companies carrying on business in the state but also to companies having the right to do so. It is true that provisions for the allocation of income for taxing purposes are based upon the use of real or personal property in this state. The value of the plaintiff's personal property in this state is small and no value is placed in the finding upon its leaseholds. But obviously these were the means adopted by it for the successful operation of its business in this state, and no doubt they were of material service in producing the large proportion of the plaintiff's business which is attributable to Connecticut. The business conducted by the plaintiff is within the purview of the Corporation Business Tax Act of 1935.

Previous to 1913, corporations in this state had in general been subject only to the ordinary property taxes. The special tax commission appointed in 1911 discussed the various methods of taxing corporations in effect in different jurisdictions and concluded that gross earnings were the most reasonable basis for taxing them. The commission stated (p. 4): "The earnings of a corporation are the real basis of the value of its property, the value of its securities and its taxpaying ability." It rejected, however, net earnings as the measure of the tax, because it regarded them as affording an impractical basis, and added, as a second reason (p. 5): "A further objection rises from the fact that a corporation might have no net earnings whatever in a given year, and therefore escape taxation entirely. While it is true that this might be perfectly just under

a tax system based fundamentally upon income, we should bear in mind that the American tax system is today based upon property. The individual whose property has yielded him no income in a given year cannot offer that as a reason why he should not pay taxes on his property. While the importance of treating corporations and individuals upon the same footing must not be stretched, there can be little doubt that a tax system which would allow corporations having no net earnings to escape taxation entirely would be out of harmony with the general tax system prevailing in America today." In discussing the rate of a tax upon gross earnings, the commission stated (p. 8) : "Here we may fairly assume . . . that the object should be to impose a tax burden upon the corporations which shall be as nearly equivalent as possible to the burden of taxation borne by other wealth under the general property tax." The commission then proceeded to set forth a method by which it believed that result could be accomplished; and it went on to discuss the taxation of various types of public utility corporations, banks, insurance companies, and building and loan associations.

The report considered at some length the problem presented by interstate commerce. It stated (p. 17); "Just as a tax imposed upon the property of a corporation should fall only upon its property located within the State imposing the tax, so the tax on gross earnings must be imposed only upon such share of the gross earnings as may fairly be assigned to the State imposing the tax. We are for the present concerned only with the question of economic justice as between States and not with any constitutional question. Where corporations are doing business of an interstate character it is necessary, therefore, to devise some equitable rule by which the gross earnings may be apportioned as between the State imposing the tax and

other States. To make the apportionment as exact as possible we should assign to the State imposing the tax all earnings from business performed wholly within the State. We should exclude all business done wholly without the State. We should then assign to the State in question its share of all business which crosses the State line." As to the constitutionality of such a tax, the commission said (p. 18): "First of all, there is no question of the general principle that all laws which impose taxes directly upon receipts from interstate commerce are in violation of the Federal Constitution and void. On the other hand, the right of a State to impose taxes upon the property of corporations within its borders is unquestioned, even though the corporations be engaged in interstate commerce. Again, a State may value the property of corporations by the 'unit rule'; that is, may ascertain the total value of the entire system and then apportion to the State in question a share of the entire property according to the ratio of the mileage within the State to the total mileage of the system, or according to the ratio of business done within the State to the business of the whole system. In arriving at the value of the property of a corporation a State is free to make its earnings, either net or gross, the basis. . . . It appears, therefore, that there can be no question of the right of a State to impose a tax at a given rate upon the earnings of a corporation as an exclusive tax, and in lieu of all other taxes upon the property of the corporation, provided the resulting burden is fairly measured so as not to be in excess of the burden which would be imposed by a tax on the ad valorem basis."

The report of the special commission leaves no doubt that it proposed a tax upon corporations which would represent a share of the general tax burden as nearly equivalent as possible to the burden borne by other

taxpayers under the property tax laws, and that gross earnings were recommended as the basis for determining that share as fairly as might be done. The legislature at its 1913 session did not adopt any act imposing a tax upon corporations generally. The tax commissioner in his report for the years 1913 and 1914 (p. 61) recommended, among other matters for the consideration of the General Assembly, "The imposition of an annual franchise tax on all general corporations organized in the State, and a similar tax on foreign corporations doing business in the State." The General Assembly, in disregard of the advice of the commission that the tax be based on gross income, assessed it upon the basis of net income. Public Acts, 1915, Chap. 292, § 23. Section 22 of the 1915 act provided as follows: "If such company carries on business outside of this state, a portion of the net income on which the tax is imposed by the United States shall be apportioned to this state as follows: In case of a company deriving profits principally from the ownership, sale, or rental of real estate, and in case of a company deriving profits principally from the sale or use of tangible personal property, such proportion as the fair cash value of its real estate and tangible personal property in this state on the date of the close of the fiscal year of such company in the year next preceding is to the fair cash value of its entire real estate and tangible personal property then owned by it, with no deduction on account of any incumbrance thereon; in case of a corporation deriving profits principally from the holding or sale of intangible property, such proportion as its gross receipts in this state for the year ended on the date of the close of its fiscal year next preceding is to its gross receipts for such year within and without the state." That the General Assembly chose to base the tax not upon gross income but upon net income, a method discussed by

the commission in its report but rejected by it for the reasons we have stated, does not show that the underlying nature of the tax was intended to be other than that advocated by the commission. In 1917 the General Assembly provided that the tax imposed by the 1915 act should be in lieu of all taxes which otherwise would be laid on moneys and credits, including accounts receivable, and of all taxes upon the franchises of domestic corporations except an existing tax on capital stock, and "in lieu of all other taxes on the privilege of doing business within this state upon the foreign corporations" liable to taxation under the law. Public Acts, 1917, Chap. 298, § 6.

In 1919, in the case of *Underwood Typewriter Co.* v. *Chamberlain,* 94 Conn. 47, 108 A. 154, affirmed, 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165, the plaintiff, a Delaware corporation which had a manufacturing plant in this state and did business here and in other states, appealed from the apportionment and assessment of a tax against it based upon the provisions of the statutes we have referred to and attacked the constitutionality of the tax as applied to it. The case was reserved for advice as to certain questions involved in the action, and in answering those questions we held the tax not to be in violation of the federal constitution. In the course of the opinion, we said (p. 54): "It is necessary in the first place to determine the nature of the tax complained of. The State contends that it is in the nature of an excise tax, the plaintiff that it is a tax on property, and the brief filed by the *amicus curiae* that it is an income tax. We think the State is right in its characterization of the tax. It is not a tax on property; the plaintiff pays a separate local tax on its property. This tax falls on income and not on property. If the plaintiff had made no net income for the year 1915, it would have escaped this tax alto-

gether, although its taxable property in Connecticut on July 1st, 1915, remained the same as before. It is not an income tax, as such, because it is assessed only if and when the corporation does business within the State, and in the case of domestic corporations doing business in this and other States there is no attempt to assert personal jurisdiction for the purpose of taxing their entire income. Foreign and domestic corporations are treated alike, and the entire income is not taxed unless the entire business of the corporation is done within the State. It is apparent, therefore, that the basis of the tax is not jurisdiction over the property or over the person of the corporation, but jurisdiction over its business; and that it is a tax in the nature of an excise tax levied against domestic and foreign corporations alike, for the privilege of doing business in a corporate capacity within this State." Then, referring to the 1917 act, we proceeded (p. 55): "The legislative construction thus put upon Part IV of the Act, although not in itself conclusive, is consistent with its practical consequences, and accords with the conclusion already stated. The fact that the tax is measured by a percentage of net income, or, in the case of a corporation engaged in interstate commerce, by a percentage of a part of its net income proportioned to the amount of its tangible property in this State, does not, of course, prevent it from being an excise or privilege tax." We said further (p. 64): "The legislature evidently intended to make the tax proportionate to the value of the privilege."

In a report of a temporary tax commission appointed under an act passed by the General Assembly at its 1933 session, and mistakenly referred to in the opinion of the Circuit Court (*Spector Motor Service, Inc.* v. *Walsh,* 139 F. 2d 809, 811) as the genesis of the law, the tax was discussed at considerable length and

spoken of at times as an income tax; Report of the Connecticut Temporary Commission to Study the Tax Laws of the State and Make Recommendations concerning Their Revision (1933), p. 447 et seq.; but the decision from which we have quoted was referred to, and its language adopted as the proper characterization of the tax. The first recommendation of the commission was (p. 459) "That the state taxes on miscellaneous corporations be clearly designated as franchise taxes." In accordance therewith, in a redraft of the statute enacted in 1935, the section imposing the tax requires each corporation within the statute to pay annually "a tax or excise upon its franchise for the privilege of carrying on or doing business within the state"; General Statutes, Cum. Sup. 1935, § 418c; and this language has since been retained. Cum. Sup. 1939, § 354e; Sup. 1941, § 176f; Sup. 1947, § 295i.

While the report of the 1933 commission taken literally might be regarded as recommending that a legislative construction be placed upon the act, which, as we said in *Underwood Typewriter Co.* v. *Chamberlain,* 94 Conn. 47, 55, 108 A. 154, would not be conclusive, the language used in the amendment definitely fixes for the time after it was enacted the character of the tax the legislature intended to impose. The tax is then a tax or excise upon the franchise of corporations for the privilege of carrying on or doing business in the state, whether they be domestic or foreign. *Stanley Works* v. *Hackett,* 122 Conn. 547, 551, 190 A. 743. Net earnings are used merely for the purpose of determining the amount to be paid by each corporation, a measure which, by the application of the rate charged, was intended to impose upon each corporation a share of the general tax burden as nearly as possible equivalent to that borne by other wealth in the state. As regards a corporation doing business both within and without

the state, the intention was, by the use of a rather complicated formula, to measure the tax by determining as fairly as possible the proportionate amount of its business done in this state. There is no ground upon which the tax can be said to rest upon the use of highways by motor trucks, as the Circuit Court suggests (*Spector Motor Service, Inc.* v. *Walsh,* 139 F. 2d 809, 815), for obvious reasons: It is a general law applying not only to corporations engaged in motor trucking but to all corporations; and, when it was first enacted, such transportation played a very small, if any, part in the life of the community, and no subsequent action by the legislature has so changed the nature of the tax as to bring in such considerations. In this respect the report of the temporary tax commission appointed under the act of the 1933 session of the General Assembly is interesting in that it discussed (p. 482 et seq.) such a tax upon commercial motor vehicles and, for reasons given, recommended that it be not imposed, and it has not been enacted into law.

Section 418c of the 1935 act imposed a tax of 2 per cent upon "every mutual savings bank, savings and loan association and building and loan association doing business in this state, and every other corporation or association carrying on business in this state" which is required to report to the collector of internal revenue, "to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state during the income year," with a provision not material to the issues before us that, with certain exceptions, the tax should not be less than a minimum computed under § 421c of the act. Section 419c provided that, in determining net income, "there shall be deducted . . . all items deductible under the federal corporation net income tax law effective and in force on the last day of

the income year, except (1) federal taxes on income or profits, losses of prior years, interest received from federal, state and local government securities and specific exemptions, if any such deductions shall be allowed by the federal government and (2) interest and rent paid during the income year." The report of the temporary tax commission of 1933 (p. 457) gives this reason for the exclusion from permissible deductions of "interest received from federal, state and local government securities": "It has been pointed out that the inclusion of such income in the tax base would result in a small aggregate increase in the burden of the corporation net income tax upon miscellaneous corporations at the same time that it would substantially increase revenues from the bank tax over what could be anticipated from the narrower income tax base. Furthermore, we see little reason for differentiating, in a business tax, between income derived from investments in stocks and government securities and income derived from other investments." The report also, in recommending the exclusion from permissible deductions of "interest and rent paid during the income year," stated (p. 455): "A business tax should not depend upon the financial organization of a corporation but rather upon the amount of business done. This is not related to the amount of capital invested by stockholders or the equity of stockholders in the assets of the corporation, but rather to the amount of capital used in the business whether borrowed or contributed by stockholders. To satisfy this requirement, it is necessary to redefine net income so as to include payments and accruals to the credit of all contributors of capital—that is, rental and interest payments and accruals as well as net profits." In *W. T. Grant Co.* v. *McLaughlin*, 129 Conn. 663, 667, 30 A. 2d 921, referring to page 423 of that report, we said: "The purpose

of not permitting the deduction of rents and interest is to arrive at a truer value of the assets employed in a business and prevent the avoidance of the tax burden by poor management, excessive salaries, a top-heavy financial structure or the like." See *House of Hasselbach* v. *McLaughlin,* 127 Conn. 507, 509, 18 A. 2d 367. The only change made in this statute as it appeared in the 1939 Supplement to the General Statutes was that previously noted, the insertion of the words "or having the right to carry on business" in the provision first quoted from it above.

Having thus determined the basis of the tax as applied to corporations generally, the General Assembly turned to corporations whose business was partly out of the state. Section 420c begins: "If the trade or business of the taxpayer shall be carried on partly without the state, the business tax shall be imposed on a base which reasonably represents the proportion of the trade or business carried on within the state. The allocation of the base of the tax measured by net income shall be made on the following basis." The statute then goes on to fix that basis as quoted in the footnote.[1] This method was in effect recommended by

---

[1] (1) Interest, dividends, royalties and gains from sales of intangible assets, less related expenses, when received by a company having its principal place of business within the state, shall be allocated to the state and, when received by a company having its principal place of business without the state, shall be allocated without the state; provided, when it can be clearly established that such income is received in connection with business within the state, such income shall be allocated to the state without regard to the location of the principal place of business of the taxpayer, and a similar rule shall apply to such income received in connection with business without the state; (2) gains from sales or rentals of tangible capital assets held, owned or used in connection with the trade or business of the taxpayer but not for sale or for rent in the regular course of business shall be allocated to the state if the property sold or rented be situated in the state prior to the sale or during the rental thereof, otherwise such gains shall be allocated outside the state; (3) net income

the commission of 1933, which in its report stated (p. 458): "The principal considerations in an allocation scheme are three in number. The scheme should produce substantially equitable results; it should be sufficiently flexible to take care of exceptional cases within the law; and it should conform as closely as possible to the allocation methods employed in other states. After working upon this problem for a decade, a committee of the National Tax Association has concluded that these ends may best be attained by means of the so-called Massachusetts plan, a plan now in use in five states and similar to the plans in use in six other

of the above classes having been separately allocated and deducted as above provided, the remainder of the net income of the taxpayer shall be allocated and apportioned as follows: (a) Such income, when derived from business other than the manufacture, sale or use of tangible personal or real property, shall be specifically allocated within and without the state under rules and regulations of the tax commissioner; (b) when derived from the manufacture, sale or use of tangible personal or real property, the portion thereof attributable to business within the state shall be determined by means of an allocation fraction to be computed as the simple arithmetical mean of three fractions. The first of these fractions shall represent that part of the average monthly fair cash value of the total tangible property held and owned by the taxpayer during the income year which is held within the state, without deduction on account of any incumbrance thereon but excluding any property the income of which is separately allocated under the foregoing provisions of this chapter. The second fraction shall represent the part of the total wages, salaries and other compensation to employees paid by the taxpayer during the income year from offices, agencies or places of business within the state, provided all such payments shall be assigned to the office, agency or place of business of the taxpayer at which the employee chiefly works or from which he is sent out or with which he is chiefly connected. The third fraction shall represent the part of the taxpayer's gross receipts from sales or other sources during the income year, excluding any income which is specifically allocated under subdivisions (1) and (2) of this section, which is assignable to offices, agencies or places of business within the state, provided such receipts shall be assigned to that office, agency or place of business at or from which the transactions giving rise thereto are chiefly negotiated and executed.

states. This scheme involves the separate allocation of certain items of net income which can be clearly apportioned to a given state. The net income so allocated usually includes interest, rentals, royalties, and gains from the sale of capital assets. The remaining net income is then allocated according to a fraction which is arrived at by taking the simple arithmetic average of three other fractions. These three fractions consist of (1) the ratio of tangible property within the state to all tangible property, (2) the ratio of gross receipts assignable to the state to total gross receipts, and (3) the ratio of the payrolls of all places of business within the state to total payrolls. It is commonly provided that upon application of the taxpayer approved by the tax commissioner this arbitrary allocation fraction need not be used (1) when it produces inequitable results and (2) when the accounts of the taxpayer permit the use of the separate accounting method of apportionment. When neither the separate accounting method nor the statutory allocation fraction is applicable, the tax commissioner is usually given the power to make the allocation according to his best judgment. The experience of other states is that few such cases arise."

Section 424c of the 1935 law required each company subject to the tax to file a return upon forms prescribed by the tax commissioner which should give the necessary data for the computation of the tax, and provided that it should be filed on or before the first day of April in each year, except when the income year differed from the calendar year, in which event it was to be filed within ninety days after the end of the fiscal year. While amended in some details, this continued to be the law when the taxes in question before us were assessed. Cum. Sup. 1939, § 358e. Section 426c provided that any company might make a supplemental

return in certain cases within such reasonable time as the tax commissioner might prescribe, and required that, if the return to the collector of internal revenue should be corrected in any respect affecting the tax imposed by the act, a supplemental return should be made within ten days after receipt of notification of the correction. This section was somewhat changed by amendments in 1937 and 1939, but in no respect material to the issues before us. Sup. 1937, § 257d; Cum. Sup. 1939, § 359e. Section 427c of the 1935 law provided: "Failure to file returns. Any company which shall fail to make any return required by the provisions of this chapter within the time limit specified herein shall pay a penalty of five dollars, which penalty shall be added to the amount of tax assessed against such company and shall be paid at the time of paying such tax. If any such company shall not have made its annual return within three months after the time specified in section 424c, the commissioner, within three years of the due date of the tax which would be properly based upon such return, shall make such return, according to the best information obtainable and according to the form prescribed, and to the tax imposed upon the basis of such return he shall add twenty-five per cent thereof or fifty dollars, whichever is greater." This law was in effect when the taxes in question in this case were assessed.

Section 431c requires each company making a return to compute the tax payable and accompany the return with cash or check in payment of it; the commissioner was required to examine the return and in case any error was discovered notify the taxpayer; within thirty days thereafter he was to pay any additional amount due; but, if any rebate was due him, this was to be paid to him by the state treasurer on order of the comptroller. Section 434c provides that

any taxpayer having paid any tax under the act who was aggrieved as regards the imposition of the tax or of any penalty might apply to the commissioner within thirty days after notice for a hearing to secure a correction of the tax; the commissioner was required promptly to consider any such application and might grant or deny a hearing, giving notice of his action and, if the application was granted, of the time and place of hearing; after a hearing the commissioner might make such order as appeared to him just and lawful and notify the taxpayer of it; and the commissioner might on his own initiative order a hearing. Section 435c provides that "any taxpayer aggrieved because of any tax laid" under the act might within one month from the time provided for the payment of the tax appeal to the Superior Court in Hartford County; the court was authorized to grant "such relief as may be equitable" and to direct the state treasurer to pay "the amount of such relief" to the taxpayer, with interest at 6 per cent. These provisions were in effect when the taxes involved in this action were assessed.

From the exhibits made a part of the finding of the trial court, it appears that for each of the periods in question the plaintiff first filed as a return the blank required by the tax commissioner but gave no figures; and to it was annexed, "for the purpose of informing the Tax Commissioner," an affidavit in which the plaintiff set forth that it was engaged solely in interstate commerce and claimed that it was not liable to the tax. For the periods June 1, 1935, to May 31, 1936, June 1, 1936, to May 31, 1937, and June 1, 1937, to May 31, 1938, it later filed amended returns which were filled out. The trial court has found that the tax commissioner assessed taxes for the periods in question to a total principal amount of $6,122.77, which, with the addition of interest and penalties, makes the

amount claimed by the state $7,795.50. We assume in default of anything in the record indicating the contrary that for the periods for which the plaintiff filed no returns giving figures the commissioner acted under the provisions of § 427c set forth above. The amounts so found by the court are taken from an exhibit offered in evidence through the senior examiner in the tax commissioner's office, and, while they do not in all respects correspond with the notices of assessment addressed to the plaintiff and attached to the returns offered in evidence, no question has been raised as to the accuracy of the examiner's computation. Nor is it claimed that proper notice of the assessments was not given to the plaintiff.

As we understand the plaintiff's brief, it bases its claims that the tax violates the constitution of this state upon two grounds. The first is that, as this tax is not imposed upon partnerships or individuals engaged in businesses like those carried on by corporations within the provisions of the act, there results an unconstitutional classification. In the first place, no provision of our constitution requires that taxation shall be equal and uniform; *State* v. *Murphy,* 90 Conn. 662, 668, 98 A. 343; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 204, 132 A. 561; *Montgomery* v. *Branford,* 107 Conn. 697, 707, 142 A. 574; and in *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 219, 21 A. 2d 383, we adopted, with reference to a taxing statute, a statement made in *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989, that a classification must "be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classifica-

tion of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy." In *Silver* v. *Silver*, 108 Conn. 371, 143 A. 240, affirmed, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, we upheld the constitutionality of a statute restricting the liability of drivers of automobiles to guests riding in them although it was claimed to be an unjustifiable classification in that a like restriction did not apply to guests riding in other vehicles, and we said (p. 378): "Primarily the question of classification is for the legislature and the courts will not interfere unless the classification is clearly unreasonable."

The question whether the act results in an unconstitutional classification is very definitely presented by a provision in our taxing statutes to which we have previously referred but which is not cited in the plaintiff's brief. During the period in question the statutes imposed a tax upon "Unincorporated Business" based upon the gross income from business "conducted within the state, but not including gross income of retail and wholesale mercantile business from sales in interstate commerce nor gross income of motor transportation business from interstate commerce." Cum. Sup. 1935, § 458c. Section 461c provided that in the case of business not entirely conducted in this state the tax should be computed on the gross income from that part of it carried on within the state. The statutes contain provisions for no other tax upon such business except ordinary property taxes. In § 457c, motor transportation business was defined as "the carrying for hire of goods, wares, merchandise or passengers in or upon a motor vehicle," except passenger business subject to a tax under another provision of the statute. The effect of these provisions read in conjunction with the general tax imposed upon corporations is that, while a corporation engaged in interstate commerce is

subject to a tax upon its net income, an unincorporated business of like nature is subject to no tax except the ordinary property tax. If we were considering the application of the federal constitution in this case, this situation would make necessary a careful consideration of *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927, which reversed a decision of the Pennsylvania Supreme Court in *Commonwealth* v. *Quaker City Cab Co.*, 287 Pa. 161, 169, 134 A. 404, and in which it was held that a statute imposing a tax upon the gross receipts of foreign and domestic corporations from the operation of taxicabs in intrastate transportation of passengers violated the federal constitution because it failed to impose a like tax upon the receipts of individuals and partnerships engaged in the same kind of business. The authority of the decision of the Supreme Court of the United States seems to us to have been greatly weakened by the decision in *White River Lumber Co.* v. *Arkansas*, 279 U. S. 692, 49 S. Ct. 457, 73 L. Ed. 903, where the court upheld as not violative of the federal constitution a statute authorizing the collection of back taxes upon lands of a corporation which did not apply to lands of natural persons, and the distinction made between that case and the *Quaker City Cab Co.* case does not commend itself to us, as it did not to the three dissenting justices in the *White River Lumber Co.* case.

Be that as it may, we have no doubt of the power of our General Assembly to impose upon corporations a tax such as that provided in the act of 1935 even if it does not lay a like tax upon natural persons doing the same type of business. The distinction is well pointed out in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 161, 31 S. Ct. 342, 55 L. Ed. 389: "The thing taxed is not the mere dealing in merchandise, in which the actual

transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade. The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships. It is this distinctive privilege which is the subject of taxation, not the mere buying or selling or handling of goods which may be the same, whether done by corporations or individuals." These considerations may not apply to their full extent as regards a foreign corporation doing business in a state; but it remains true that such a corporation brings with it many of the advantages inhering in its entity as an artificial person. The exclusion of motor transportation business from the tax on unincorporated business was introduced into the statutes of 1935, no doubt as a result of the conclusion of the temporary tax commission that a tax on the gross earnings of persons engaged in interstate business would be held invalid; (Report, p. 455); and there was no intent unjustly to discriminate between corporations engaged in interstate motor freight business within the Corporation Business Tax Act and natural persons carrying on a similar business. The application of the act to the plaintiff is an incident to the operation of a law intended to be broad in scope.

Inequalities and discriminations frequently arise from the necessity that a statute shall, in its classifications, be couched in general terms. *Doncourt* v. *Danaher,* 126 Conn. 678, 685, 13 A. 2d 868; *Lyman* v. *Adorno,* 133 Conn. 511, 522, 52 A. 2d 702. The fact that the Corporation Business Tax Act imposes a tax burden upon the plaintiff as a corporation which a natural person engaged in a like business does not have to bear does not under our constitution invalidate the imposition of the tax on it. See note, 71 A. L. R. 265.

The other ground upon which the plaintiff claims that the imposition of the tax upon it violates our constitution is that subsection 3 (a) of § 420c, quoted above in the footnote, vests the tax commissioner with a broad authority without any adequate specifications by the General Assembly of standards and without laying down an intelligible principle to which an administrative officer must conform. *Connecticut Baptist Convention* v. *McCarthy,* 128 Conn. 701, 704, 25 A. 2d 656. That subsection provides that in determining the allocation fraction for interstate business, after the net income has been separately allocated and deducted, the remaining net income is to be apportioned as follows: "(a) Such income, when derived from business other than the manufacture, sale or use of tangible personal or real property, shall be specifically allocated within and without the state under rules and regulations of the tax commissioner." The plaintiff does not point out, nor does it appear on the face of the record, that the commissioner in making the assessments against the plaintiff acted under this provision of the statute; so far as appears he applied subsection 3 (b), to which the plaintiff's claim has no application; and the plaintiff is in no position to attack the constitutionality of the law on this ground. *State* v. *Sinchuk,* 96 Conn. 605, 615, 115 A. 33.

In computing the tax against the plaintiff, the tax commissioner added to its net income as reported to the collector of internal revenue 40 per cent of the rent paid the Wallace Transport Company for the hire of its trucks. In view of the reasons for not permitting the deduction of "rent" in determining the basis of the state tax which we have stated, we conclude that the word was not used by the General Assembly in its technical meaning of compensation paid for the occupancy of real property but includes money paid for the use of personalty. We applied the statute to sums paid for rental fees for personal property in *W. T. Grant Co.* v. *McLaughlin*, 129 Conn. 663, 668, 30 A. 2d 921. The reason for adding only 40 per cent of the sum actually paid for the use of the trucks was because the attorney general of the state had advised a predecessor of the defendant in a somewhat similar case to deduct from the agreed rent expenses assignable to salaries, wages, gasoline and oil, and other related expenses created by the operation of the trucks, in order to arrive at an actual rental value. As a result of that opinion the then tax commissioner took evidence from various trucking firms and arrived at 40 per cent as a mean ratio. The agreement before the attorney general when he gave his opinion was not one for the payment of a fixed rental but the charge was to be "the fair and reasonable value of the service rendered." Without considering whether his opinion would apply fully to a case where there was a fixed rent, we point out that no facts before us indicate that 60 per cent was not a fair basis of value for the expenses deducted from the rent, and in the absence of such facts we cannot find that the plaintiff was harmed by being charged with only 40 per cent of the rent it paid. The only other attack made upon the correctness of the commissioner's computation is that

the tax should have been computed under subsection (a), above quoted, and not under other provisions of the act. As we have previously pointed out, the statute applies to the plaintiff because its income is derived from the use of personal property in the state, and the commissioner was right in not assessing the tax upon the basis of subsection (a).

The defendant claims error in the admission of evidence as to the reason why the plaintiff qualified with the secretary of the state under the provision of § 3489 of the General Statutes. We do not regard the reasons given as material to the issues before us, and so cannot find the error, if one was committed, other than harmless. We note also that both the Circuit Court of Appeals and the United States Supreme Court state this as among the facts they considered; *Spector Motor Service, Inc.* v. *Walsh*, 139 F. 2d 809, 811; *Spector Motor Service, Inc.* v. *McLaughlin*, 323 U. S. 101, 102, 65 S. Ct. 152, 89 L. Ed. 101; and it can at least serve to complete the picture they will have before them on a rehearing of the case in the federal courts.

The trial court should not have decided whether the Corporation Business Tax Act was in violation of the United States constitution, because that question, as we have stated, is still before the federal courts for decision. Its other conclusions were correct.

There is error in part, the judgment is set aside and the trial court is directed to enter judgment as on file, except that the provision that the Corporation Business Tax Act was violative of the constitution of the United States should be eliminated.

In this opinion the other judges concurred.